*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re DOCKERY/MITCHELL/SINGLETON
Minors.

UNPUBLISHED
March 12, 2020

No. 349741
Wayne Circuit Court
Family Division
LC No. 17-000068-NA

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

In this child protective proceeding, respondent mother appeals as of right an order awarding the father, M. Miles, sole legal and physical custody of the minor child, MM, and terminating its jurisdiction and wardship over MM. Respondent previously had sole legal and physical custody of MM. We affirm.

Respondent has four children: MM, JS, DD, and KM. This matter originated as a child protective action initiated by the Department of Health and Human Service (DHHS) to make respondent's four children temporary court wards. During the pendency of the child protective proceedings, respondent's children were removed from her care and MM was placed with her father, Miles. The court assumed jurisdiction over the children and ordered respondent to participate in services to work toward reunification. Subsequently, Miles filed a motion for sole custody of MM. In excess of two years after the children came under the court's jurisdiction, respondent completed the terms of her treatment plan and her children were returned to her custody, with the exception of MM who remained with Miles. The court awarded Miles sole physical and legal custody of MM. After Miles was awarded custody of MM, the court terminated its jurisdiction and wardship over MM. Respondent contends that the court erred because the award of sole physical and legal custody of MM to Miles was not in MM's best interests. We disagree.

The trial court's findings of fact in a child custody case are reviewed under the great weight of the evidence standard. *In re AP*, 283 Mich App 574, 590; 770 NW2d 403 (2009). "The court's factual findings are against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. Discretionary decisions, including the court's ultimate award of custody, are reviewed for an abuse of discretion. *Id*.; *McIntosh v McIntosh*, 282 Mich App 471,

-1-

475; 768 NW2d 325 (2009). "An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). The trial court's interpretation and application of law are reviewed for clear error. *In re AP*, 283 Mich App at 590. "Clear legal error exists when the trial court incorrectly chooses, interprets, or applies the law." *Id.*

Respondent first argues that the trial court should have retained jurisdiction and continued the child protective proceedings to ultimately return MM to respondent. We disagree.

This matter involves the Juvenile Code, MCL 712A.1 *et seq.*, and the Child Custody Act (CCA), MCL 722.21 *et seq.* Both acts allow the state to "become involved in a child's upbringing under certain limited circumstances when a child's welfare is affected." *In re AP*, 283 Mich App at 592. In actions involving the legal or physical custody of a child, courts are bound by the CCA. *Id.* And once a custody order is entered, a court cannot change the award of custody without following certain procedures designed to prevent unwarranted and disruptive custody changes. *Id.* But when a child's safety is threatened, the juvenile code governs the court's involvement in the parent-child relationship. *Id.* Orders entered by a juvenile court with jurisdiction supersede all previous court orders, including custody orders, during the pendency of the juvenile proceedings. *Id.* at 593. Once the juvenile court dismisses its jurisdiction, however, previous custody orders have full force and effect because the CCA vests the domestic relations court with continuing jurisdiction over the custody matter. *Id.* at 593-594. The circuit court presiding over a proceeding under the juvenile code may, however, consider related matters under the CCA, including a motion for a change in custody. *Id.* at 598-599. But the court must effectuate any changes or modifications in accordance with the procedural and substantive requirements of the CCA. *Id.* at 578.

This matter originated as a child protective action initiated by the DHHS to obtain jurisdiction and to make respondent's children temporary wards. According to the petition authored by DHHS, it was contrary to MM's welfare to remain with respondent because of respondent's untreated mental health issues. During this proceeding brought under the juvenile code, Miles filed a motion for a change of custody. To grant a change of custody under the CCA, the trial court must determine whether proper cause or a change of circumstances existed such that a custody modification was in the child's best interests. *Id.* at 600. The party seeking the change must establish either proper cause or a change of circumstances. *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009). To constitute a change of circumstances meriting a consideration of a custody change, there must have been a change in conditions pertaining to custody that has, or could have, a significant impact on the child's well-being since the entry of the last custody order. *Id.* at 604, quoting *Vodvarka v Grasmeyer*, 259 Mich App 499, 513; 675 NW2d 847 (2003). Removal of a child from the home by CPS is sufficient evidence of a change in circumstances to warrant consideration of a change in custody. *Shann v Shann*, 293 Mich App 302, 306; 809 NW2d 435 (2011). In this case, after the trial court examined the updated custody report from the Clinic for Child Study, the court found by a preponderance of the evidence that a change of circumstances had occurred because MM was removed from respondent's care and custody in January 2017. After MM was removed from respondent's care, MM was placed with Miles and MM had been residing with Miles for the past two years. This was sufficient evidence to establish a change in circumstances warranting a reevaluation of custody. See *id.*

Respondent argues that trial court should have granted her custody because she rectified the circumstances that led to her children being removed from her care. In essence, respondent argues that, because MM's placement with Miles was temporary, MM should be returned to her care. But respondent did not voluntarily transfer custody of MM. MM and her siblings were removed from respondent's care by DHHS because of respondent's mental health issues. In addition, MM's placement with Miles has not been temporary. There was no agreement regarding when, or if, MM would be returned to respondent, and MM has resided with Miles for the past two years. MM has established stability and permanency with Miles. Therefore, consistent with the purposes underlying the CCA, it is in MM's best interest "to minimize disruptive changes to custody arrangements," and keep her in Miles's care. See *Kaeb v Kaeb*, 309 Mich App 556, 567; 873 NW2d 319 (2015).

Next, the trial court had to determine whether a custodial environment existed. See *In re AP*, 283 Mich App at 604. Whether an established custodial environment exists is a question of fact that the trial court must address before it determines the child's best interests. *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). A custodial environment is established if

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

"A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Berger*, 277 Mich App at 707. In addition, "[r]epeated changes in physical custody and the uncertainty resulting from an upcoming custody trial can destroy an established custodial environment." *Rains v Rains*, 301 Mich App 313, 333; 836 NW2d 709 (2013).

The trial court concluded that MM's custodial environment was with Miles. MM was removed from respondent's care because of concerns regarding respondent's untreated mental health problems. During the child protection proceedings, respondent refused to take her medication and participate in therapy on multiple occasions. Respondent also struggled to benefit from any of the court-ordered services. It took respondent over two years to complete the court-ordered services, and during that time MM had been residing with Miles. After MM was placed with him, Miles became actively involved in her life, and the court noted that MM was "flourishing." Therefore, the trial court did not err by finding that an established custodial environment existed with Miles. "If an established custodial environment exists with one parent and not the other, then the noncustodial parent bears the burden of persuasion and must show by clear and convincing evidence that a change in the custodial environment is in the child's best interests." *In re AP*, 283 Mich App at 601.

The court, however, failed to consider whether an established custodial environment existed with both parties. Respondent was granted sole physical and legal custody of MM in 2008, and for the first nine years of MM's life she resided exclusively with respondent. Miles was largely absent from MM's life before MM was placed in his care in 2017. After MM was placed in Miles'

care, MM continued to have supervised visits with respondent. Therefore, although MM resided exclusively with Miles for two years, there is the possibility that an established custodial environment existed with both parties. However, even if the court had determined that an established custodial environment existed with both parents, a joint established custodial environment may be disrupted if clear and convincing evidence indicated that a change was in the best interests of the child. *Powery v Wells*, 278 Mich App 526, 529; 752 NW2d 47 (2008). And, here, after evaluating the best-interest factors, the court found by clear and convincing evidence that it was in MM's best interests to grant sole physical and legal custody to Miles. Therefore, the court used the appropriate standard in determining whether a change in custody was warranted. See *In re AP*, 283 Mich App at 602.

The best-interest factors are specified in MCL 722.23. "A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors." *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001). "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). In its discussion of the best-interest factors, the circuit court held that factors (b), (d), (e), (g), (h), and (k) favored Miles. The court determined that factors (a), (c), and (j) equally favored both respondent and Miles, and that factor (f) favored respondent. With respect to factor (i), the court stated that it had information regarding MM's preference, but elected not to disclose the child's preference.

Respondent challenges the trial court's determination that it was in MM's best interests to grant Miles's motion for sole physical and legal custody. Respondent also contends that it is in MM's best interests to be in the same household as her siblings. We disagree.

Respondent argues that the record does not support the trial court's finding that factor (a) did not weigh in her favor. This factor considers "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). Specifically, respondent argues that the "[t]he court reasoned that the best interest of [MM] did not include the love and bond between the child and her mother and siblings." However, the circuit court determined this this factor equally favored both respondent and Miles because the court recognized that both parties had developed an emotional bond with MM.

Respondent also argues that the trial court failed to adequately consider that she had rectified the problems that led to her children being removed from her care. Respondent contends that she has successfully completed all of the court-ordered services, that she is treating her mental health issues, and that JS, DD, and KM have been returned to her care. The trial court specifically recognized that MM and her siblings had been removed from respondent's care. "Since that time [Miles] has stepped up and cared for his child." Although respondent completed her court-ordered services, it took her over two years to do so, and during that time MM had been residing with Miles. Further, while respondent was in the process of completing the services, she continually refused to take her medications and had assaulted JS on one occasion. Respondent also continued to maintain a domestic relationship with another individual, despite their history of violent interaction. The trial court emphasized that Miles had provided MM with a stable home and that MM would maintain continuity if she remained with Miles. Specifically, MM had been in the same home for the past two years, "whereas when [MM] was with the [respondent] they had moved on more than a couple occasions for one reason or another. . . ." Further, the circuit court noted

-4-

that MM has been "flourishing" since she has been living with Miles. The Clinic Evaluation Report provided that MM's grades have improved significantly and that MM has begun participating in after-school activities.

Respondent further contends that it is in MM's best interests to be in the same household as her siblings. "[I]n most cases it will be in the best interests of each child to keep brothers and sisters together. However, if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Wiechmann v Wiechmann*, 212 Mich App 436, 440; 538 NW2d 57 (1995) (footnote omitted). After examining the relevant factors, the court determined that it was clearly in MM's best interests to remain with Miles. The court noted that MM also resides with her two half siblings at Miles' home and that MM has developed a relationship with her half siblings. The court encouraged respondent and Miles to work together so that MM could maintain her relationship with DD, JS, and KM, and the court ordered that respondent should have "liberal" parenting time. We conclude that the trial court did not abuse its discretion in awarding Miles physical and legal custody of MM. See *Berger*, 277 Mich App at 705.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto