*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KINGA KOSTREVA,

Plaintiff-Appellee,

v

MICHAEL KOSTREVA,

Defendant-Appellant.

FOR PUBLICATION
June 24, 2021
9:00 a.m.

Nos. 352029; 353316
Macomb Circuit Court
LC No. 2017-001184-DM

Before: MURRAY, C.J., and FORT HOOD and RICK, JJ.

FORT HOOD, J.

Defendant appeals as of right the trial court's orders granting plaintiff's request to take the parties' minor daughter, LKK, to Poland for two weeks, changing the custodianship of the child's passport from defendant to plaintiff, and granting plaintiff's request for attorney fees while denying defendant's request for the same. We affirm in all respects.

## I. FACTUAL BACKGROUND

In 2017, the parties divorced and entered a consent judgment of divorce providing that the parties would share joint legal and physical custody of LKK, but that defendant would retain LKK's passport. On July 3, 2019, plaintiff's mother—LKK's grandmother—passed away unexpectedly while visiting plaintiff and LKK from Poland. In preparation to return the decedent to her home in Poland for a memorial service and burial, plaintiff sought consent from defendant to travel with LKK to Poland for two weeks. Defendant did not consent, leading plaintiff to file an emergency motion with the trial court to authorize the travel on July 18, 2019. In the motion, plaintiff requested LKK's passport from defendant, and requested attorney fees. The trial court granted the motion the following day, authorized plaintiff to travel with LKK to Poland from July 20, 2019, to August 3, 2019, and set a hearing on the permanency of the passport's custodian and attorney fees for August 5, 2019.

Following the hearing, a referee recommended that defendant retain custody of LKK's passport, but that defendant reimburse plaintiff for the $1,112.50 in attorney fees necessitated by the motion. Defendant filed objections to the fees. On that basis, a subsequent evidentiary hearing was held on November 1, 2017. Following that hearing, the trial court issued a written opinion

-1-

and order denying a request by defendant for attorney fees and increased the fees owed to plaintiff to $6,395. The court additionally, and apparently on its own motion, revisited the issue of permanent custody of LKK's passport and decided plaintiff would be the custodian of the passport. Defendant filed a motion for reconsideration, which the trial court denied. This appeal followed.

## II. THE UNIFORM CHILD ABDUCTION PREVENTION ACT

Defendant first contends that the trial court erred in modifying the parties' consent judgment of divorce to effectively reverse protective orders against parental kidnapping without first considering the factors outlined in the Uniform Child Abduction Prevention Act (UCAPA), MCL 722.1521 *et seq*., or the best-interest factors from the Child Custody Act, MCL 722.21 *et seq*. We disagree.

As a preliminary matter we note that, under the circumstances, "[n]o exception need be taken to a finding or decision" in order to preserve the issue of whether the trial court erred by modifying the parties' consent judgment of divorce to change the custodianship of the child's passport from plaintiff to defendant. See MCR 2.517(A)(7). However, for the purposes of this appeal, we find it relevant to note that defendant failed to invoke any argument below concerning the UCAPA or the Child Custody Act. That is to say, defendant's argument on appeal necessarily implies that the trial court should have sua sponte considered provisions of the UCAPA, and in so doing the best-interest factors set forth in MCL 722.21 of the Child Custody Act, prior to awarding custody of the child's passport to plaintiff.

The same general standard of review applies to Issues II through V of this opinion: All custody orders must be affirmed on appeal unless the trial court's factual findings are against the great weight of the evidence, the court committed a palpable abuse of discretion,[1] or the court made a clear legal error on a major issue. MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994).

The UCAPA, MCL 722.1521 *et seq*., was enacted, effective January 12, 2015, to "allow courts in this state to impose measures to prevent the abduction of children; to establish standards for determining whether a child is subject to a significant risk of abduction; and to provide remedies." 2014 PA 460. Under MCL 722.1524(1), "[a] court on its own motion may order abduction prevention measures in a child-custody proceeding if the court finds that the evidence establishes a credible risk of abduction of the child," and under subsection (2), "[a] party to a child-custody determination . . . may file a petition seeking abduction prevention measures to protect the child under this act." These provisions indicate that the provisions of the UCAPA are not

---

[1] "Although the 'outside the range of reasonable and principled outcomes' standard is now the 'default abuse of discretion standard,' child custody cases specifically retain the historic *Spalding* standard." *Moote v Moote*, 329 Mich App 474, 478 n 2; 942 NW2d 660, 663 (2019), citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). According to *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), an abuse of discretion occurs when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

applicable unless specifically invoked—either by the court or by a party. As specified in subsection (1), a court's authority to invoke the UCAPA arises when there is evidence establishing "a credible risk of abduction of the child."

In this case, however, although defendant asserts that plaintiff's emergency motion occasioned "the first time a Michigan court was being asked to review an order entered based on the risk factors in the UCAPA," he claims incorrectly that he raised this issue in his response to plaintiff's emergency motion and in his motion for reconsideration. In arguing the issue in his brief on appeal, he nowhere otherwise asserts that the UCAPA was ever invoked by anyone throughout the proceedings below. Further, although defendant complains that plaintiff has at times taken some liberties with her time or travel with LKK, including by not always providing defendant with satisfactory notice, he does not assert that plaintiff ever attempted any actual abduction in the sense of parental kidnapping in derogation of his own parental rights. Because the record does not reveal any evidence establishing "a credible risk of abduction of the child," the trial court did not commit clear legal error for not having sua sponte invoked the UCAPA during the proceedings below.

## III. PROPER CAUSE AND CHANGE OF CIRCUMSTANCES

Related to the previous issue, defendant next contends that the trial court abused its discretion by changing the custodianship of the child's passport from defendant to plaintiff without first determining that proper cause or changed circumstances warranted revisiting the issue.

As with the framing of the UCAPA issue, in framing this issue defendant speaks to the trial court having reversed "protective orders" against "parental kidnapping." In fact, defendant calls attention to no specific protective orders, but asserts that in the parties' predivorce history "a Cook County, Illinois trial court issued protective orders designed to ensure against parental kidnapping." Defendant elaborates that "Appellee-Mother obtained an Emergency Order of Protection against him from the Cook County, Illinois, Domestic Relations Division" in January 2014, citing "County, Illinois Case No. 13 OP 75578 (Cook County PPO Order)," and that "the Cook County trial court vacated the Emergency Order of Protection based on Appellee-Mother's motion on January 22, 2014." According to defendant, further such litigation had the result that "[o]n October 14, 2015, the Cook County trial court entered an Order for Visitation placing restrictions on the requested travel, including that Appellant-Father travel to Poland with the minor child." Defendant otherwise refers to "protective language included in a Consent Judgment of Divorce to prevent international parental kidnapping."

Defendant does not specifically assert that the instant trial court failed to afford full faith and credit to any pertinent Illinois orders, all of which predated the parties' Macomb County divorce proceedings culminating in a consent judgment. Although defendant asserts, without citation of authority, that when "Cook County transferred (not dismissed) its custody case to Michigan because the parties and the courts determined that Michigan was the more convenient forum, the protective provisions went with them into the new state," he then adds that the instant trial court "never needed to review Cook County's findings because the parties reached a Consent Judgment of Divorce that included similar protective provisions." At issue, then, is not the "reversal," or overruling, of specific protective orders originating in Illinois, but rather the

enforcement or modification of certain particulars in the parties' Macomb County divorce judgment.

According to MCL 722.27(1)(c), a court may modify an existing child custody order "for proper cause shown or because of change of circumstances." That subsection further states that a court may not change a child's established custodial environment except upon presentation of "clear and convincing evidence that it is in the best interest of the child," and sets forth criteria for determining the existence of an established custodial environment. "However, a lesser, more flexible, understanding of proper cause or change in circumstances is applicable to a request to modify parenting time" in ways that would not affect the child's established custodial environment. *Marik v Marik*, 325 Mich App 353, 367-368; 925 NW2d 885 (2018) (quotation marks and citation omitted). Further, if the proposed modification would not change the custodial environment, the proponent of the modification need show that the change is in the child's best interests on a mere preponderance of the evidence. *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). In this case, defendant concedes that plaintiff's motion for custody of the subject child's passport has no bearing on the child's established custodial environment.

"A party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change in circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests." *Kaeb v Kaeb*, 309 Mich App 556, 571-572; 873 NW2d 319 (2015). However, because the modification of a mere condition on the exercise of parenting time "will generally not affect an established custodial environment or alter the frequency or duration of parenting time," the "lesser, more flexible, understanding of 'proper cause' or 'change in circumstances' " is the applicable one. *Id.* at 570-571. Accordingly, the proponent of such modification need show only "that there is an appropriate ground for taking legal action." *Id.* at 571.

Defendant, citing *Kaeb*, characterizes custody of the subject child's passport as a condition of the parenting-time provision of the parties' custody arrangement. That characterization is a strained one. At issue in *Kaeb* was the conditioning of a party's exercise of parenting time on his attending Alcoholics Anonymous meeting and continuing counseling. *Id.* at 572. In contrast, custodianship of a child's passport has no direct bearing on the apportionment of parenting time, including the scheduling of it, but instead potentially bears on the balance of power, or opportunity to abuse authority, between parties to shared custody arrangements as concerns the child's international travel. Custody of the child's passport is a "condition" of parenting time only in that sense, not in the sense at issue in *Kaeb*, where the father was ordered to participate in Alcoholics Anonymous and counseling in order to maintain his eligibility to exercise his parenting time.

In *Ludwig v Ludwig*, 322 Mich App 266, 274; 911 NW2d 213 (2017) (2017), rev'd 501 Mich 1075 (2018), this Court held that a court may enter an order that does not modify parenting time "without first holding an evidentiary hearing regarding the contested best interests of the children." That case concerned a reunification order whereby the defendant and the children, along with two therapists, were to participate in a video conference, after which the "frequency, duration, and method of continued contact will be at the therapists' discretion." *Ludwig*, 322 Mich App at 272. The trial court had declared that "therapeutic contact" in that form did not constitute parenting time, and thus that the order effected no change in that regard. *Id.* This Court agreed

-4-

that "a court-ordered videoconference between defendant, the children, [and two therapists] does not constitute the 'parenting time' envisioned under the Child Custody Act." *Id.* at 274.

Our Supreme Court reversed, holding, in an order entered in lieu of granting leave, that "the circuit court should have held an evidentiary hearing and considered the best interests of the children before entering the reunification order." *Ludwig*, 501 Mich at 1075 (2018). The Supreme Court noted that the order below "left up to the unfettered discretion of the therapists the 'frequency, duration, and method' of any additional contact between the defendant and the children for a six-month period following the initial video conference," then stated that "the circumstances of this case warrant a hearing to determine whether the reunification process authorized by the circuit court's order is in the children's best interests." *Id.* The Court thus expressed disagreement not with this Court's declaration that a trial court need not conduct a best-interest hearing before issuing an order that does not modify parenting time, but rather with this Court's acceptance of the characterization of an order requiring video contact between parent and children, and authorizing therapists to direct further such contact, as one not modifying parenting time.

Because this Court's decision in *Ludwig* was wholly reversed, no part of it remains binding authority. See MCR 7.215(J)(1). However, we note that, because the Supreme Court did not express disapproval of this Court's declaration that an order that does not modify parenting time need not follow from an evidentiary best-interest hearing, that facet of the case continues to offer useful instruction. Here, because which of the parties has custody of their daughter's passport has no direct bearing on the daughter's custodial environment, or on any existing order's provisions for how much parenting time either parent is to have, including whether and when it is exercised, we hold that the trial court did not commit a clear legal error, or palpably abuse its discretion, by changing the custodianship of the child's passport from defendant to plaintiff without first determining that proper cause or changed circumstances warranted revisiting the issue.

IV. DUE PROCESS

Defendant next contends that the trial court deprived him of due process when it issued the ex parte order permitting plaintiff to travel with LKK to Poland. We disagree.

Preliminarily, neither the court below nor either party on appeal has addressed the issue of mootness in conjunction with defendant's objections to the ex parte order. But plaintiff and the child had gone to, and returned from, Poland by the time defendant filed his written response to plaintiff's emergency motion. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). However, in light of the parties' history of failing to reach agreement over LKK's travels, we note the exception to our policy of declining to reach moot issues when the issue may recur between the parties while tending to evade timely appellate review. See *Contesti v Attorney General*, 164 Mich App 271, 278; 416 NW2d 410 (1987). We elect to address the issue.

Defendant contends that plaintiff did not seek judicial relief when their disagreement over LKK going to Poland became apparent, on July 10, 2019. Defendant notes that, had plaintiff filed a motion sooner, there might have been time for defendant to present his side of the argument. Instead, plaintiff filed for an ex parte order on an emergency basis on July 18, 2019, for a trip to

begin just two days later, thus guaranteeing that defendant would have no meaningful opportunity to oppose the motion. Defendant further protests that the trial court overlooked plaintiff's failure to support her motion with verification or an affidavit, and that plaintiff's proposed order did not include notice of defendant's rights in the matter when the court signed and issued the order.

Defendant cites caselaw for the proposition that "[a] party has a constitutional right to due process—that is, notice that his or her rights will be affected and an opportunity to be heard prior to the determination affecting those rights." Indeed, "[b]oth the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law." *Reed v Reed,* 265 Mich App 131, 159; 693 NW2d 825 (2005). See also US Const, Am XIV, § 1; Const 1963, art 1, § 17. "The purpose of any notice is to give the opposite party an opportunity to be heard." *White v Sadler*, 350 Mich 511, 518; 87 NW2d 192 (1957).

MCR 3.207 governs ex parte and temporary orders. Subrule (B) includes the following provisions:

> (1) Pending the entry of a temporary order, the court may enter an ex parte order if the court is satisfied by specific facts set forth in an affidavit or verified pleading[2] that irreparable injury, loss, or damage will result from the delay required to effect notice, or that notice itself will precipitate adverse action before an order can be issued.

> (2) The moving party must arrange for the service of true copies of the ex parte order on the friend of the court and the other party.

> (3) An ex parte order is effective upon entry and enforceable upon service.

> * * *

> (5) An ex parte order providing for child support, custody, or visitation . . . must include the following notice:

>> "NOTICE:

>> "1. You may file a written objection to this order or a motion to modify or rescind this order. You must file the written objection or motion with the clerk of the court within 14 days after you were served with this

---

[2] Verification of a pleading may be accomplished by "oath or affirmation of the party or someone having knowledge of the facts stated," MCR 1.109(D)(3)(a), or a signed statement to the effect that the signer declares "under the penalties of perjury" that the signer has examined the document, and that "its contents are true" according to the signer's "best . . . information, knowledge, and belief," MCR 1.109(D)(3)(b).

order. You must serve a true copy of the objection or motion on the friend of the court and the party who obtained the order.

"2. If you file a written objection, the friend of the court must try to resolve the dispute. If the friend of the court cannot resolve the dispute and if you wish to bring the matter before the court without the assistance of counsel, the friend of the court must provide you with form pleadings and written instructions and must schedule a hearing with the court.

"3. The ex parte order will automatically become a temporary order if you do not file a written objection or motion to modify or rescind the ex parte order and a request for a hearing. Even if an objection is filed, the ex parte order will remain in effect and must be obeyed unless changed by a later court order."

Again, plaintiff filed her emergency motion to authorize out-of-country travel on July 18, 2019. With the motion, plaintiff provided three exhibits. Exhibit 1 was a copy of a death certificate indicating that plaintiff's mother died in Macomb County on July 2, 2019, and listing Polish names for the place or location of disposition of the body. Exhibit 2 was a copy of an e-mail from plaintiff to defendant, dated July 17, 2019, and stating, in three separate paragraphs, "This is my 2 weeks vacation time with Laura: July 20–August 3, 2019. We are going to Tarnow, Poland. Please provide me with Laura's passport ASAP." Exhibit 3 consisted of a proposed ex parte order. Plaintiff filed a proof of service indicating that a copy of the motion was "served upon the Defendant directly via First-Class Mail . . . as well as via email" on July 18, 2019.

On July 19, 2019, the day after plaintiff filed her emergency motion, the trial court entered the proposed ex parte order, which stated that, "pursuant to the Judgment of Divorce and given the recent passing of the maternal grandmother, the Plaintiff shall be allowed to exercise uninterrupted summer parenting time to travel to Tarnow, Poland from July 20, 2019 through August 3, 2019," and that "Defendant shall immediately provide the minor child's passport to the Plaintiff for the purpose of this international travel."

Not in dispute is that plaintiff's motion engendering the subject ex parte order was neither itself verified nor accompanied by an affidavit, thereby failing to satisfy MCR 3.207(B)(1), and that plaintiff's proposed order, and thus the order the court entered, did not include the notice provisions spelled out under MCR 3.207(B)(5). In affirming the decision to grant the ex parte order, the trial court noted in relation to plaintiff's failure to observe some of the particulars of MCR 3.207(B):

Significantly, Defendant has not established the failure to procure an affidavit or verified statement in support of the motion was—in light of Plaintiff's counsel's schedule—other than harmless error or resulted in any prejudice. Therefore, Plaintiffs failure to comply with MCR 3.207(B)(1) is excused. Moreover, . . . Defendant's repeated unashamed refusals were unwarranted and the same outcome of the emergency motion would have resulted if defendant had appeared for a hearing on the motion.

The parties blame each other for plaintiff's last-minute resort to an emergency motion for an ex parte order: defendant on the ground that plaintiff could have initiated legal action several days earlier upon the emergence of the parties' disagreement, and plaintiff on the ground that defendant unreasonably rebuffed her repeated attempts to obtain his consent to the child's going abroad for two weeks. The trial court concluded that defendant withheld his approval unreasonably, and credited plaintiff with repeatedly attempting to obtain defendant's consent without resorting to litigation. Defendant recounts his stated reasons for objecting to a two-week absence, but does not assert that the trial court's factual conclusions were contrary to the great weight of the evidence. In any event, we note that, at the very least, the trial court and the plaintiff seemed to appreciate better than defendant the policy preference for avoiding litigation in favor of negotiated resolutions. See *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n*, 484 Mich 1, 24; 795 NW2d 101 (2009) (recognizing the "compelling policy . . . to limit litigation and promote settlements"); *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 705; 575 NW2d 68 (1997) ("[t]he purpose of the notice requirement is to promote settlement without the need for formal litigation"); *Jackson v Barton Malow Co*, 131 Mich App 719, 722; 346 NW2d 591 (1984) ("this state has a very strong policy favoring settlements").

In arguing that the trial court was too forgiving of plaintiff's failure to satisfy some of the requirements of MCR 3.207, defendant relies on *Ryan v Ryan*, 260 Mich App 315; 677 NW2d 899 (2004). In that case, this Court noted that "our Supreme Court has determined, with respect to medical malpractice cases, that when a [statutorily] required affidavit is absent or defective, the complaint, standing alone, is insufficient to commence a medical malpractice action," and, in light of that instruction, held that "a petition for emancipation filed without the statutorily mandated affidavits and documents is insufficient to commence an emancipation action." *Id.* at 338. This Court further noted that the trial court had "excused the lack of affidavits and documents," and, before examining the trial court's reasons for doing so and finding them unsatisfactory, noted that "the statute does not allow the filing of the affidavits and documents to be excused." *Id.*, citing MCL 722.4a. Defendant thus suggests that this Court treat the requirement of MCR 3.207(B)(1) that a petition for an ex parte order be verified or supported by an affidavit as no more amenable to being excused by the court than similar statutory requirements relating to medical malpractice or emancipation actions.

However, the existence of avenues for obtaining ex parte orders results from the recognition that sometimes a party presents a court with a bona fide emergency compelling the court to issue an order without waiting for normal adversarial processes to play themselves out, and thus that a court entertaining a petition prompted by such unusual pressures should be at liberty to recognize the principle, as recited by the United States Supreme Court in a different context, that " 'sound procedure often requires discretion to exact *or excuse* compliance with strict rules,' " *Walker v Martin*, 562 US 307, 320; 131 S Ct 1120; 179 L Ed 2d 62 (2011) (emphasis added), quoting 16B Wright, Miller, & Cooper, Federal Practice & Procedure § (2d ed, 1996), § 4028, p 403. See also *Chisnell v Chisnell*, 99 Mich App 311, 321-324; 297 NW2d 909 (1980) (failure to verify a pleading in a divorce action is a relatively minor procedural defect and thus, in the absence of manifest injustice, does not warrant reversal on appeal). With all of the above in mind, we discern no evidentiary or clear legal error on the trial court's part in issuing the ex parte order.

V. SUA SPONTE CONSIDERATION OF PARENTING TIME DETERMINATION

-8-

Defendant next argues that the trial court abused its discretion when it decided to consider the issue of permanent custody of LKK's passport following the de novo evidentiary hearing. We disagree.

MCR 3.215 covers referee hearings. MCR 3.215(E)(4) states that "[a] party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order by filing written objection," which must "include a clear and concise statement of the specific findings or application of law to which an objection is made." In the event of such judicial follow up, MCR 3.215(F)(2) provides:

> To the extent allowed by law, the court many conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court may, in its discretion:
>
> (a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;
>
> (b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;
>
> (c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;
>
> (d) impose any other reasonable restrictions and conditions to conserve the resource of the parties and the court.

In this case, a referee hearing took place following plaintiff's and LKK's return from Poland on August 5, 2019. The result was a proposed order with two enumerated recommendations. The second granted plaintiff $1,112.50 in attorney fees connected with obtaining the ex parte order. The first responded to plaintiff's request for permanent custody of the subject child's passport as follows:

> 1. With regard to the issue of the minor child's passport, the Judgment of Divorce is very clear. Listed under the parenting time provision in the Judgment of Divorce, it is an issue that is modifiable. Parties' current situation does not arise to a change of circumstances warranting a modification of the court's current order regarding the passport. Therefore, that request is denied.

Defendant, who obviously had no reason to object to the above recommendation, objected to only the recommendation that he pay plaintiff's attorney fees. Plaintiff filed no objections of her own, including over the recommendation that defendant retain custody of the passport.

At a subsequent November 1, 2019 evidentiary hearing, plaintiff's attorney elicited from plaintiff that LKK had a passport, that the consent judgment of divorce provided that defendant was the custodian of the passport, and that defendant was entitled to "48 hours['] notice for like Canada travel, and then 30 days['] notice for outside of U.S. travel." When counsel asked about passport problems in earlier years, defense counsel objected, stating, "I don't understand what the

passport issue has do with the matter at hand with respect to attorney fees." The trial court overruled the objection, noting that the passport was "the subject of a number of the emails which have been admitted as part of the joint exhibits, that the passport has to be provided so [LKK] could travel with her mother to Poland."[3] Plaintiff's counsel went on to elicit that plaintiff had to resort to retaining legal counsel in order to obtain access to the child's passport in 2018, and then that plaintiff had similar problems in connection with the instant case.

Later in the proceeding, while defense counsel was eliciting from defendant that he had agreed to a consent order to resolve an issue with the child's travel in 2018, the trial court stated, "I'm not sure how it's relevant to today's hearing, which is, you know, whether [plaintiff's attorney's] fees are reasonable and whether his refusal to allow [LKK] to travel and turn over the passport was frivolous or not." Thereafter, plaintiff's counsel elicited from defendant on cross-examination that the 2018 consent order came about only after plaintiff had filed a motion, and that the order called on defendant to release the passport "[r]ight away," but that as of the day after the order was signed, plaintiff was still asking for it. When defendant stated that there were logistical problems involved, the trial court intervened:

> No, it sounds like logistics are pretty darn easy. You're all on this side of town. And so, . . . I don't know exactly what, when your daughter was going back and forth, that you just couldn't tuck it into her backpack when she's hopping out of the car, or getting in, if you were seeing her during this period of time. But, seems pretty straightforward. And I don't know when mom's plane, off the top of my head, was leaving, and why it was important to have the passport by a certain time. But, I mean, the fact that you're here arguing over this stuff does not make either of you look very responsible, because most parents don't argue about this kind of stuff. Most parents are more reasonable and work with each other.

In closing argument, plaintiff's counsel stated that, at a time when plaintiff should have been arranging for travel along with "family services and memorials and grieving," plaintiff was "battling back and forth for eight days with her ex-husband on getting the passport and being able to take her daughter to Poland for two weeks" and that, "[w]hen someone should be grieving and dealing with family, she shouldn't be fighting with her ex-husband about travel to Poland with her daughter and getting a passport."

The trial court concluded the evidentiary hearing by announcing that it was taking the matter under advisement, and that a written opinion would follow. As noted, the written opinion and order that followed not only awarded plaintiff attorney fees, but also awarded her custodianship of the child's passport.

Defendant filed a motion for reconsideration in connection with both facets of the decision below, which the trial court denied. In the motion, defendant cited authority for the proposition

---

[3] The court further indicated with some level of dissatisfaction that, after it ordered defendant to provide plaintiff with the passport, defendant proceeded to leave it for her under a planter. The court noted: "I would assume that's relevant at that point, because the child could not travel without her passport."

-10-

that because plaintiff did not object to the referee's recommendation that defendant retain custody of the child's passport, she was not entitled to a judicial hearing on that question. But at issue here is not whether plaintiff was entitled to further consideration of that issue, but whether the trial court acted within its broad discretion under MCR 3.215(F) by choosing to reach and decide the question. Defendant argued that "[e]ven if Plaintiff was somehow allowed to 'piggy-back' her silent objections to the referee's denial of her motion . . . respecting control of the child's passport onto Defendant's objections to the referee's attorney fee decision, due process would require that a party not be surprised by a judicial ruling on an issue that was not articulated or argued."

In denying reconsideration, the trial court stated as follows:

> Significantly, Defendant acknowledges [the] Referee . . . addressed Plaintiffs request "to serve as the custodian of the minor child's passport moving forward." At the evidentiary hearing held November 1, 2019, Plaintiff testified as to her difficulty in obtaining the minor child's passport from Defendant in both 2018 and 2019. On each occasion, Plaintiff stated she needed to retain counsel to obtain the minor child's passport from Defendant. Defendant objected to the relevancy of Plaintiff's testimony and the objection was overruled. Defendant subsequently testified to and was cross-examined on his claimed cooperation in providing the minor child's passport to Plaintiff on each occasion.
>
> Inasmuch as both parties raised and argued the issue of compliance with the *Consent Judgment of Divorce* provision regarding the minor child's passport, the Court could properly consider and determine Plaintiff would henceforth have possession of the minor child's passport. See *Sturgis v Sturgis*, 302 Mich App 706, 708-709; 840 NW2d 408 (2013) (noting MCR 3.205(F)(2) allows a trial court to expand the scope of a de novo hearing to "impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court") and MCL 552.507(4) (allowing trial court to sua sponte expand the de novo hearing to include "*any* matter that has been the subject of a referee hearing" [emphasis added]).
>
> As noted, the *Consent Judgment of Divorce* provides that Defendant would retain the minor child's passport. However, the *Consent Judgment of Divorce* also required Defendant to provide the minor child's passport to Plaintiff for international travel and precluded either party from traveling to a country that is not party to the Hague Convention.[4] In light of these specific provisions allowing international travel, Defendant's argument (and proposed supporting evidence) that his continued possession of the minor child's passport would somehow preclude Plaintiff from absconding with the minor child wholly lacks merit.

---

[4] "The Hague Convention seeks to protect children from the harmful effects of cross-border abductions (and wrongful retentions) by providing a procedure designed to bring about the prompt return of such children to the State of their habitual residence." *Hightower, Caught in the Middle: The Need for Uniformity in International Child Custody Dispute Cases*, 22 Mich St Int'l L Rev 637, 639-640 (2014) (quotation marks and citation omitted).

Therefore, the *Opinion and Order* dated November 12, 2019 properly awarded Plaintiff possession of the minor child's passport.

On appeal, defendant asserts that the parties were not allowed to present evidence on the passport issue at the referee hearing, citing the transcript of that hearing generally, but without specifying any page or pages. In fact, plaintiff's attorney announced at the start of the referee hearing the intention to address "who's going to be the custodian moving forward of the passport," and then went on to do so with reference to facts of record, or implied offers of proof, relating to the parties' history of problems managing the child's passport. Neither the referee nor defendant expressed any objections. Defense counsel argued in kind, asserting that "father tells me mother was deemed a flight risk" in Illinois proceedings, which was why the parties' consent judgment of divorce ended up "detailing the control of the passport being vested in father." Defense counsel further pointed out that plaintiff had dual citizenship, owned real property in Poland, and was now "married to a Polish National," and argued that those considerations and the parties' antagonistic relationship "creates a danger of a flight risk." The transcript includes no indication that either party wished to bring evidence beyond the existing record on the issue.

Further, the trial court did not wholly introduce the issue of custody of the child's passport, but rather cited the development of that issue at the referee hearing, and also the evidence presented at the evidentiary hearing relating to the parties' problems sharing the passport. The court was thus exercising its broad prerogatives under MCR 3.215(F)(2) to rely on the record of the referee hearing, as supplemented at the court's discretion, when it concluded that "the Court could properly consider and determine Plaintiff would henceforth have possession of the minor child's passport."

Defendant further protests that the trial court reached the passport issue "not on its own motion, but after the de novo hearing had already concluded," thus emphasizing that the latter hearing came about in response to the single objection to the referee's recommendations that the parties articulated, which was defendant's objection to the award of attorney fees, and thus the trial court appeared to be open to entertaining arguments about passport management only as they related to the reasonableness of defendant's reluctance to consent to plaintiff's travel plans for the child. Defendant cites authority that stands for the proposition that parties seeking a judicial hearing on objections to referee recommendations are obliged to specify their objections and provide the opposition with notice, see MCR 3.215(E)(4) and (5), and suggests that the trial court erred in reaching the passport issue without providing such notice. However, defendant cites no authority for the proposition that the objection and notice requirements set forth for the parties apply to the court as well. Moreover, MCL 552.507(4) states as follows:

The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

Bearing directly on this issue is that the authorization to bring about "a de novo hearing on any matter that has been the subject of a referee hearing" extends to the court on its own motion, as the instant trial court noted. It is further instructive that the statutory timing constraint for such a

-12-

motion applies only to parties, not courts, thus suggesting that a court has greater flexibility with regard to such action.

For all of the above reasons, we reject defendant's claim that the trial court improperly considered and decided anew plaintiff's request for custody of the subject child's passport.

## VI. PLAINTIFF'S REQUEST FOR ATTORNEY FEES

Defendant next contends that the trial court clearly erred and abused its discretion by finding that defendant's objections to plaintiff's requests to take the parties' daughter to Poland for two weeks were unreasonable, and thus that his defenses to her resort to legal process in the matter were frivolous and cause for a sanction of attorney fees. We disagree.

This Court reviews a trial court's award of attorney fees for an abuse of discretion. *In re Condemnation of Private Property for Highway Purposes*, 221 Mich App 136, 139-140; 561 NW2d 459 (1997). Where attorney fees are concerned, an abuse of discretion occurs where the result lies outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002).

The parties' consent judgment of divorce includes the following provision:

> 8. The parents agree to abide by, and therefore this Court orders, the following Parenting Principles in connection with the custodial and parenting plan for their child:
>
> * * *
>
> b. The parents shall cooperate to the extent which may be appropriate under the circumstances in accommodating one another should one wish to have the minor child for some special event or occasion or an extended vacation.

Again, plaintiff filed her emergency motion to authorize out-of-country travel on July 18, 2019. The motion included a request that the trial court "entertain the imposition of attorney fees," while explaining that, because of time pressure, no specific amount was yet specified. The August 5, 2019 referee hearing resulted in a proposed order with two enumerated recommendations. The first opined that there had not been a sufficient change of circumstances to warrant granting plaintiff's request for permanent custody of the child's passport. The second responded to plaintiff's request for attorney fees as follows: "Plaintiff's request for attorney fees is granted. Plaintiff's attorney submitted his billing statements. The fees for obtaining the ex parte order were $1,112.50. Fees in that amount are granted to Plaintiff payable by Defendant." As noted, in the end, the trial court increased the amount of attorney fees charged to defendant to $6,395—now covering fees incurred since the original referee recommendation. As defendant emphasizes in his reply brief, he contests not the reasonableness of the amounts involved, but rather the trial court's determination that he was responsible for those amounts because of having maintained a frivolous position below.

-13-

"Michigan follows the 'American rule,' according to which "attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v Sterling Hts*, 471 Mich 700, 706-707; 691 NW2d 753 (2005), citing MCL 600.2405(6). MCR 3.205(D)(2)(b) specifically authorizes a party to a domestic relations action to request attorney fees when "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply . . . ." Further, the court rule that covers judicial hearings following referee hearings specifies that "[i]f the court determines that an objection is frivolous . . . the court may assess reasonable costs and attorney fees." MCR 3.215(F)(3). A position is frivolous if "(1) the party's primary purpose was to harass, embarrass, or injure the prevailing party, or (2) the party had no reasonable basis upon which to believe the underlying facts were true, or (3) the party's position was devoid of arguable legal merit." *Cvengros v Farm Bureau Ins Co*, 216 Mich App 261, 266-267; 548 NW2d 698 (1996), citing MCL 600.2591(3)(a).

In this case, the trial court noted the parties' mutual obligation to cooperate to the extent appropriate under the circumstances when one of them wishes to have LKK in connection with a special occasion, and also that plaintiff was entitled to two weeks' uninterrupted vacation with LKK each summer. The court further explained as follows:

> Plaintiff's mother unexpectedly died while visiting Plaintiff. Inasmuch as her mother was from Poland and all Plaintiff's family resides in Poland, she naturally sought to take her mother home for a memorial service and burial. To this end, Plaintiff immediately notified Defendant of her mother's death and requested to take the minor child to Poland for two weeks for the funeral services as soon as it could be arranged. Plaintiff would repeat her request several more times over the ensuing two weeks, including a request to utilize her summer parenting time.

> Defendant unreasonably refused Plaintiff's request. His purported justification, that removing the minor child from summer school would be detrimental, wholly lacks any merit. Indeed, he did not even try to contact the minor child's teachers until after the Ex Parte Order had already been procured. Defendant's justification is nothing more than after-the-fact attempt to defend his groundless refusals. It is clear that his only reason in doing so was to harass Plaintiff. He was thinking only of himself and the additional pain he could inflict on Plaintiff and not what was in the minor child's best interest.

> The minor child's first-grade report card does not indicate any areas of concern. She was either meeting or approaching standards/expectations in each identified subject matter. She also successfully completed the Kuman Level 4A Reading Program on May 21, 2019. She is now in second grade and there is no evidence even suggesting she is having any problems at school. [Her first-grade teacher] testified that she only recommended summer school as an option so the minor child's progress would not regress [and that] she advised both parties that the minor child could also continue reading at home.

-14-

Summer school only ran four days per week for three hours each day. The students only spent part of that time on reinforcing academic activities; the remainder was spent playing and having lunch.

When Plaintiff contacted [the summer-school teacher] about missing summer school, [the teacher] understood the circumstances (something lost on Defendant) and said she could send the work to Plaintiff for the minor child to do on her own. In a moment of clarity, Defendant did finally acknowledge[] there were other alternatives available if the minor child missed summer school.

Therefore, Defendant's actions in this matter were clearly frivolous and violated the *Consent Judgment of Divorce*.

On appeal, defendant takes issue with the trial court's findings only insofar as he insists that his lack of cooperation over plaintiff's travel ambitions were in fact driven by the child's need for the academic and linguistic benefits of minimally interrupted summer school, but defendant does not challenge the court's finding that defendant "did not even try to contact the minor child's teachers until after the Ex Parte Order had already been procured." That finding, along with the court's detailed attention to the child's recent and unproblematic academic record, and recognition that even defendant acknowledged that there were alternative ways to gain the benefits of summer school, support the trial court's conclusion that defendant had other, more cynical motives for refusing to cooperate with plaintiff at that time.

For these reasons, defendant has failed to show that the trial court clearly erred by concluding that defendant's general lack of cooperation with plaintiff as the latter endeavored to arrange to travel with the child to Poland in order to attend funeral services for the child's grandmother was unreasonable. The trial court did not err in concluding that defendant violated his obligation under the divorce judgment to cooperate as appropriate in such a situation, that defendant's defenses to the ex parte order were ill-intentioned and not factually supported, and that they were therefore frivolous. Defendant has thus failed to show that the trial court's decision to hold him responsible for plaintiff's attendant attorney fees was an abuse of discretion.

## VII. DEFENDANT'S REQUEST FOR ATTORNEY FEES

Defendant next contends that the trial court abused its discretion when it declined his request for attorney fees. We disagree.

Defendant bases his argument mainly on his having had to respond to an emergency motion for an ex parte order to allow the parties' daughter to travel to Poland, when the motion was neither verified nor accompanied by an affidavit, thereby failing to satisfy MCR 3.207(B)(1), and the accompanying proposed order did not include the notice of rights set forth in MCR 3.207(B)(5). We concluded above that the trial court was within its rights when it expressly excused those deficiencies, or treated them as harmless error. Here, we reiterate that, because plaintiff's failures to comply perfectly with the dictates of MCR 3.207(B) were largely time pressures resulting from defendant's refusal to cooperate with plaintiff, and because defendant has not shown that he suffered any prejudice as a consequence of those procedural irregularities, the trial court reasonably overlooked the imperfect compliance with MCR 3.207(B) and proceeded with the case.

Defendant's claim for attorney fees is otherwise largely a manifestation of his disagreement with the trial court's decision to award attorney fees instead to plaintiff, appellate objections we rejected above. Indeed, defendant having failed to bring any error on the part of the trial court to light, we can discern no entitlement to attorney fees on his part. On every issue, plaintiff is properly the prevailing party in this case, and this Court may reject defendant's claim for attorney fees on that basis alone. See *Johnson v USA Underwriters*, 328 Mich App 223, 248; 936 NW2d 834, 847 (2019) ("it is a fundamental principle that attorney fees and costs may only be awarded to the prevailing party"), citing MCL 600.2591(1) and MCR 2.625(A)(1).

## VIII. CONCLUSION

We discern no clear legal error or palpable abuse of discretion on the trial court's part for modifying the consent judgment of divorce without consideration of the UCAPA or best-interest factors from the Child Custody Act because the modification did not impact custody or parenting time. The same reasoning applies to defendant's argument that the trial court failed to consider whether there was proper cause or a change of circumstances to warrant the modification. We further discern no abuse of discretion or clear legal error on the trial court's part for granting plaintiff's ex parte order despite her failure to abide certain procedural formalities, nor for the court's decision to revisit custodianship of LKK's passport on its own initiative and on the basis of all of the evidence. Lastly, the trial court did not clearly err in concluding that defendant's objections to plaintiff's requests to travel with LKK were frivolous, and in granting plaintiff's motion for attorney fees and denying defendant's motion for attorney fees on that basis.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).


/s/ Karen M. Fort Hood
/s/ Christopher M. Murray
/s/ Michelle M. Rick

-16-