# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHANIE KATHLEEN KAEB,

Plaintiff-Appellee,

v

DARIN LEE KAEB,

Defendant-Appellant.

FOR PUBLICATION
March 12, 2015
9:10 a.m.

No. 319574
Ottawa Circuit Court
LC No. 09-066151-DM

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

M. J. KELLY, P.J.

In this appeal arising out of a parenting time dispute, defendant, Darin Lee Kaeb, appeals by right the trial court's orders sanctioning him for filing a frivolous motion to modify the conditions placed on him in a parenting time order; the trial court ordered him to pay the attorney fees incurred by plaintiff, Stephanie Kathleen Kaeb, in defending the motion. Because we conclude the trial court erred when it determined that Darin Kaeb's motion was frivolous, we reverse the trial court's decision and vacate the orders compelling Darin Kaeb to pay Stephanie Kaeb's attorney fees.

## I. BASIC FACTS

Darin and Stephanie Kaeb married in July 1997. Three children were born to them during the marriage.

In December 2009, Stephanie Kaeb sued for divorce and, in July 2010, the trial court entered a consent judgment of divorce. The consent judgment granted joint legal and physical custody to the parties, but provided that the children would reside primarily with Stephanie Kaeb during the school year. The judgment gave Darin Kaeb extensive parenting time during the school year and equal parenting time during summers.

In March 2011, Stephanie Kaeb petitioned for a review of custody on the basis of a change in circumstances. Although she discussed a variety of changes, her primary allegations were that that Darin Kaeb had serious alcohol and gambling problems and might have mental health issues, which impaired his ability to provide proper care and custody to the children.

-1-

The trial court entered a stipulated order changing custody in September 2011. The order gave Stephanie Kaeb sole legal and physical custody of the children and provided Darin Kaeb with very limited supervised parenting time. The order further provided that Darin Kaeb "shall complete his alcohol treatment and therapy, comply with all aftercare treatment recommendations, and shall abstain from the use of alcohol."

The trial court entered a new order in February 2012. The order provided Stephanie Kaeb with sole legal and physical custody and gave Darin Kaeb limited supervised parenting time. The order also required Darin Kaeb to "continue alcohol treatment and therapy" and stated that he could petition for modification after "three months of compliance with the . . . schedule and requirements."

In July 2012, Darin Kaeb moved for a change in custody and unsupervised parenting time. He stated that, since the court entered its earlier orders regarding custody, he had complied with the court's requirements and had completed various programs to treat his issues with anger and alcohol, which amounted to a change in circumstances that warranted revisiting custody and parenting time. The trial court did not hold an evidentiary hearing, but eventually entered an interim order allowing Darin Kaeb to have unsupervised parenting time on specified days and providing that he must "continue with AA and counseling . . . ."

In May 2013, the trial court held what it characterized as a "review hearing on matters of parenting time." Darin and Stephanie Kaeb both testified at the hearing and described the circumstances surrounding their current parenting time schedule. Darin Kaeb also testified that he was complying with the court's orders to remain sober, attend AA, and continue with counselling.

At the conclusion of the hearing, the trial court found that the evidence showed that Darin Kaeb had been complying with the court's requirements. But it recognized that it could not "determine whether someone whose been alcohol dependent or alcohol abusive has been cured of that problem." Instead, the court stated, "maintaining sobriety is something that's proven over the course of time." To that end, the trial court required Darin Kaeb "to continue counselling with Dr. Ellens, and to attend AA regularly" as conditions on his exercise of parenting time, which it expanded. Darin Kaeb's lawyer thereafter expressed concern that it would be unfair to require his client to show a change of circumstances every few months in order to permit further expansion. For that reason, he asked the trial court if it could set a review at fixed intervals. The trial court disagreed that automatic review would be a good use of judicial resources and stated that any further "adjustments [to parenting time] will have to be [by] motion."

In June 2013, the trial court entered an order consistent with its decision from the bench. It provided that Darin Kaeb must "maintain sobriety, shall continue to counsel with Dr. Brent Ellens, [and] shall continue to attend AA regularly."

In August 2013, Darin Kaeb moved to amend the trial court's order of June 2013; he asked the trial court to remove the requirement that he continue to counsel with Ellens and continue to attend AA meetings. In support of his motion, he attached a report by Dr. Michael Makedonsky.

Makedonsky reported that he interviewed Darin Kaeb and performed psychological testing on him. He opined that Darin Kaeb was not suffering from any mental illness. He also stated that Darin Kaeb said he had not gambled or had alcohol since September 2011 and was "very motivated and very committed to staying alcohol free." On the basis of his interview and testing, Makedonsky stated that there was no clinical need for Darin Kaeb to continue with AA meetings: "It is the professional opinion of this examiner that his past use of alcohol was caused by marital conflicts and the divorce process at the time." He further opined that Darin Kaeb was "mentally and emotionally stable," did not pose "any risk of violence," and exhibited "adequate parenting skills."

Darin Kaeb also presented a letter from Ellens discharging him from counselling. In the letter, Ellens informed him that he was free to continue counselling or return if he wished, but that he believed Kaeb had "made sufficient progress in developing the ability to manage [his] frustration and stress" that he could "proceed and manage [his] life without further counselling."

Stephanie Kaeb argued in response that there were no grounds for amending the order because Darin Kaeb failed to show that there was a sufficient change in the circumstances to warrant review.

The trial court held a hearing on the motion in September 2013. At the hearing, Ellens testified that he counselled Darin Kaeb during the period of his court ordered group counselling and later during private sessions. He said he sent Kaeb a letter discharging him from counselling in June 2013. Ellens admitted on cross-examination that he sent the letter at Darin Kaeb's request.

Makedonsky also testified concerning his evaluation of Darin Kaeb, which he conducted over the course of a few days ending in July 2013. Makedonsky listed the various inventories and tests that he performed and described the purpose for their use. The results showed that he was cooperating with the testing. Makedonsky agreed that Darin Kaeb had abused alcohol in the past, but stated that he did not believe that he was an alcoholic and did not believe that he needed to attend AA meetings; there was, he explained, no "clinical reason for it . . . ."

After the close of proofs, the trial court noted the contentious history of the case and described some of the problematic behaviors that led to the limitations on Darin Kaeb's parenting time. The court expressed concern that Darin Kaeb insisted on deciding for himself whether he should attend AA meetings and counselling—as could be seen from his effort to obtain a letter and report demonstrating that there was no clinical need for him to attend either, which he sought just after the court entered its previous order continuing those conditions. The court, however, disagreed that the letter and report constituted evidence of a change in circumstances sufficient to justify the parenting time order: "There is no evidence here that there's been any change in circumstances since May 31, and certainly since June 20 when the current order was entered, and no argument that there's been any change in circumstances, only an argument that the Court was incorrect in ordering it—ordering continued counselling and AA attendance in the first place." It determined that the motion was without "legal basis" and, accordingly, frivolous. For that reason, it ordered Darin Kaeb to pay Stephanie Kaeb's costs and reasonable attorney fees as a sanction. Notwithstanding this determination, the court stated that

it would "cancel those two requirements" of its own accord. It did so because Darin Kaeb was plainly determined not to participate and would not benefit from them.

The trial court entered an order removing the requirement that Darin Kaeb attend AA and counselling in November 2013. In that same month, the trial court ordered Darin Kaeb to pay $2,227.50 in costs and attorney fees to Stephanie Kaeb. In December 2013, the trial court amended the order to require Darin Kaeb to pay $2,090.00 in costs and attorney fees.

Darin Kaeb now appeals in this Court.

## II. SANCTIONS FOR A FRIVOLOUS MOTION

### A. STANDARDS OF REVIEW

On appeal, Darin Kaeb argues the trial court erred when it determined that his motion to remove the requirement that he attend AA and counselling was frivolous. He maintains that the trial court improperly determined that the change of circumstances threshold applied to his motion and, even if it did, erred when it determined that there was no evidence to support the motion. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules to the facts. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). This Court, however, reviews for clear error the trial court's factual findings underlying its application of a court rule. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). To the extent that a trial court has discretion to impose a particular sanction, this Court reviews the trial court's decision for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

### B. THE LAW

In this case, the trial court found that Darin Kaeb's motion to remove the requirements that he attend AA and counselling was frivolous because he made the motion without a legal basis for doing so—specifically, because he failed to show any change in circumstances to support the motion. The trial court did not cite the authority on which it relied, but it is evident that the trial court's determination did not involve a claim or defense in a civil action. See MCR 2.114(F); MCL 600.2591(1) (providing for sanctions related to the prosecution or defense of a civil action); MCR 2.625(A)(2). Accordingly, it appears that the trial court ordered sanctions under MCR 2.114(E).

### 1. MCR 2.114(E)

Whenever an attorney or party signs a motion, that person's signature constitutes "certification" that he or she has "read the document" and, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and that the motion was not made for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 2.114(D)(1) to (3). If a party brings a motion that has been signed in violation of MCR 2.114(D), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ." MCR 2.114(E). The trial court may not assess punitive

-4-

damages, but may order the person who signed it or a represented party to pay "the other party or parties the amount of reasonable expenses incurred because of the filing . . . ." MCR 2.114(E). Because MCR 2.114(E) only requires the trial court to impose an appropriate sanction, which *may* include an order to pay reasonable attorney fees, the trial court has the discretion to tailor its sanction to the circumstances. See *FMB-First Michigan Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998).

On appeal, Stephanie Kaeb argues that the record evidence showed that Darin Kaeb brought the motion at issue for an improper purpose. The evidence that he filed "repetitive and baseless" motions leading up to the motion to modify the parenting time order, she maintains, is evidence from which the trial court "could conclude" that Darin Kaeb filed the motion to harass or cause unnecessary delay or needlessly increase the costs of litigation in violation of MCR 2.114(D)(3). The trial court did not, however, find that Darin Kaeb's motion was frivolous because he brought it for an improper purpose. Rather, it found that his motion was frivolous because there was "no evidence here that there's been any change in circumstances" since the entry of the last orders and, therefore, the motion was "without a legal basis". This finding implicates MCR 2.114(D)(2) rather than MCR 2.114(D)(3). Therefore, we shall limit our review accordingly.[1]

In order to assess whether Darin Kaeb's motion was "well grounded in fact" and "warranted by existing law" under MCR 2.114(D)(2), we must first address whether and how MCL 722.27(1) applies to the motion involved here.

## 2. PROPER CAUSE AND CHANGE OF CIRCUMSTANCES

Once a "custody dispute" comes before the trial court, it may take various actions "for the best interests of the child." MCL 722.27(1). The trial court may award custody to "1 or more of the parties involved," "provide for payment of support for the child," and may provide for "reasonable parenting time of the child by the parties involved . . . by general or specific terms and conditions." MCL 722.27(1)(a) and (b). A trial court may also modify or amend "its previous judgments or orders" but only for "proper cause shown or because of change of circumstances." MCL 722.27(1)(c). The trial court may not modify or amend a previous judgment or order or issue a new order "so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." *Id.*

The Legislature limited a trial court's ability to modify or amend its orders in a custody case in order to erect a barrier to the removal of children from established custodial environments and to minimize disruptive changes to custody arrangements. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). Because the limitations were intended to serve as obstacles to revisiting judgments and orders, in the context of an order affecting custody, the Court in *Vodvarka* determined that proper cause must be something more

---

[1] We express no opinion as to whether the proffered evidence would be sufficient to support such a finding.

-5-

than "*any* appropriate ground for legal action"; it must be understood to mean "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id.* at 511 (quotation marks omitted). Consistent with the obligation to avoid changes that might disrupt the child's custodial environment, the Court in *Vodvarka* similarly held that a change in circumstances cannot refer to a child's normal life changes; rather, a change in circumstance means that, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id.* at 513.

Since the decision in *Vodvarka*, this Court has recognized that the definitions applied by that court to "proper cause" and "change of circumstances" should not be applied to orders amending or modifying parenting time. *Shade v Wright*, 291 Mich App 17, 28; 805 NW2d 1 (2010). *Vodvarka* should not be so extended, the Court in *Shade* explained, because a change in parenting time did not implicate the same concerns as a change in custody:

> The *Vodvarka* definitions of "proper cause" and "change of circumstances" are inapplicable to this case, in part, because the rationale for imposing more stringent constructions on the terms "proper cause" and "change of circumstances" with respect to custody determinations is far less applicable with respect to parenting time determinations. With respect to child custody disputes, "[t]he goal of MCL 722.27 is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan v Henton*, 282 Mich App 599, 603, 766 NW2d 903 (2009). "Providing a stable environment for children that is free of unwarranted custody changes . . . is a paramount purpose of the Child Custody Act . . . ." *Vodvarka*, 259 Mich App at 511. Therefore, in the context of a child custody dispute, the purpose of the proper cause or change of circumstances requirement is "to 'erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders.' " *Id.* at 509, quoting *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 593-594, 532 NW2d 205 (1995).

> Such concerns do not exist, however, when a modification of parenting time does not alter the established custodial environment because determinations regarding child custody and parenting time serve different purposes. Whereas the primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, the focus of parenting time is to foster a strong relationship between the child and the child's parents. See MCL 722.27a. [*Shade*, 291 Mich App at 28-29.]

The Court in *Shade* declined to precisely define what proper cause or change of circumstances would be sufficient to warrant a change in parenting time, but nevertheless determined that the types of normal life-changes experienced by the child in its case were sufficient to warrant modification of the parenting time, even though those changes would be insufficient to establish grounds for a change in custody under the definitions applied in *Vodvarka*. *Id.* at 31.

The Legislature authorized trial courts in custody disputes to provide for reasonable parenting time "for the best interests of the child." MCL 722.27(1); see also MCL 722.27a(1) ("Parenting time shall be granted in accordance with the best interests of the child."). The court may provide for parenting time through "general or specific terms" and may subject the parenting time to "conditions" when it is in the child's best interests. MCL 722.27(1)(b); see also MCL 722.27a(8) (stating that a parenting time order may contain any reasonable terms or conditions). Consequently, the trial court had the authority to order Darin Kaeb to attend AA meetings and participate in counselling as conditions on his exercise of parenting time, if the court determined that those restrictions were in the children's best interests.

After complying with the trial court's requirements for some time, Darin Kaeb filed a motion asking the trial court to remove the conditions that it had imposed on his parenting time. See MCL 722.27(1)(b).[2] As such, before the trial court could grant his request, he had to demonstrate that there was "proper cause" or a "change of circumstances" that warranted the requested relief. MCL 722.27(1)(c). But, as the Court in *Shade* aptly noted, what constitutes proper cause or a change of circumstances under MCL 722.27(1)(c) will vary depending on the nature of the requested amendment or modification. If the request involves a change that alters an established custodial environment, then the more stringent framework from *Vodvarka* will apply. *Shade*, 291 Mich App at 27. If, however, the request involves a change to the duration or frequency of parenting time, the less stringent standard discussed in *Shade* will apply. See *id.* at 29-31 (discussing the need for flexibility in parenting time schedules because the child's needs will change with age and with the level of the child's involvement in activities). Here, the requested modification did not involve either a change in custody or a change in the duration or frequency of parenting time—it involved a request to remove a condition on the exercise of parenting time. Consequently, neither *Shade* nor *Vodvarka* is directly on point.

Because the imposition, revocation, or modification of a condition on the exercise of parenting time will generally not affect an established custodial environment or alter the frequency or duration of parenting time,[3] we are persuaded that a lesser, more flexible, understanding of "proper cause" or "change in circumstances" should apply to a request to modify or amend a condition on parenting time. As in *Shade*, it is evident that even normal changes to the lives of the parties affected by a parenting time order may so alter the circumstances attending the initial imposition of a condition that a trial court would be justified in revisiting the propriety of the condition. *Shade*, 291 Mich App at 29-31. A condition that was in the child's best interests when the child was in elementary school might not be in the child's best interests after he or she reaches high school. Even ordinary changes in the parties' behavior,

---

[2] Because the trial court imposed the requirements at issue as a term or condition of Darin Kaeb's parenting time, we need not determine whether MCL 722.27(1)(c) applies to every order involving custody, child support, or parenting time even if the requested change would not alter custody, child support, parenting time, or a condition on parenting time.

[3] We do not, however, foreclose the possibility that the imposition, revocation, or modification of a condition on parenting time might be so significant that it amounts to a change in custody or parenting time.

status, or living conditions might justify a trial court in finding that a previously imposed condition is no longer in the child's best interests. Similarly, we conclude that "proper cause" should be construed according to its ordinary understanding when applied to a request to change a condition on parenting time; that is, a party establishes proper cause to revisit the condition if he or she demonstrates that there is an appropriate ground for taking legal action. See *Vodvarka*, 259 Mich App at 510-511 (recognizing that "proper cause" ordinarily means any appropriate ground for taking legal action, but declining to give the phrase its ordinary meaning when applied to the context of a request to alter an established custodial environment because that would not serve the purpose of erecting a barrier to unwarranted changes to custody). Consistent with a trial court's authority to adopt, revise, or revoke a condition whenever it is in the best interests of the child to do so, see MCL 722.27(1); MCL 722.27a(1) and (8), we hold that a party requesting a change to an existing condition on the exercise of parenting time must demonstrate proper cause or a change in circumstances that would justify a trial court's determination that the condition in its current form no longer serves the child's best interests. MCL 722.27(1)(c).

## C. APPLYING THE LAW

In this case, Darin Kaeb moved to amend the parenting time order at issue by removing the conditions on his exercise of parenting time. Specifically, he argued that the requirements that he attend AA meetings and continue to counsel with Ellens were no longer necessary. He supported his motion with a letter from Ellens and a report by Makedonsky. In his letter, Ellens opined that Darin Kaeb had demonstrated sufficient progress in his ability to handle his frustration and stress that he no longer needed to attend regular counselling sessions. Makedonsky similarly reported that he subjected Darin Kaeb to various tests and determined that there was no clinical reason to justify Darin Kaeb's continued participation in AA meetings. Both Ellens and Makedonsky testified consistent with these submissions at the hearing on the motion to modify the parenting time order. Nevertheless, the trial court found that Darin Kaeb's motion to remove the conditions was frivolous because he did not attempt to show that there had been a change in circumstances since the inclusion of the conditions in the last order, as required under MCL 722.27(1)(c).

On this record, we conclude the trial court clearly erred when it found that Darin Kaeb's motion was submitted in violation of MCR 2.114(D)(2). Even assuming that Ellens' letter and Makedonsky's report did not establish a change in circumstances since the trial court last considered whether it was in the children's best interests to include the conditions on the parenting time order, those documents were sufficient to establish "proper cause" for the trial court to reconsider whether the conditions remained in the children's best interests. MCL 722.27(1)(c); MCL 722.27a(1). Ellens offered his opinion that the counselling sessions were no longer necessary to address the concerns that initially brought Darin Kaeb to him. Likewise, Makedonsky offered his expert opinion that there was no clinical reason to require Darin Kaeb to attend AA meetings. Although the trial court was free to reject the opinions and conclude that it was in the children's best interests to continue to impose those conditions, that alone did not warrant finding that the motion was frivolous. See *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002) ("[M]erely because [a] court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position."). A reasonable trial court would be justified in revisiting whether the conditions remained in the children's best interests on the basis of these expert opinions. Indeed, although it

stated that it was not doing so for the reasons proffered by Darin Kaeb in his motion, after the close of proofs, the trial court found on the whole record that it was appropriate to remove the conditions at issue. Consequently, it cannot be said that Darin Kaeb's motion was not "well grounded in fact" and "warranted by existing law." MCR 2.114(D)(2).

The trial court clearly erred when it found that Darin Kaeb's motion was frivolous under MCR 2.114(D)(2). *Johnson Family Ltd Partnership*, 281 Mich App at 387. Therefore, it erred when it ordered him to pay Stephanie Kaeb's costs and reasonable attorney fees associated with the motion under MCR 2.114(E).

## III. REMAND TO DIFFERENT JUDGE

Darin Kaeb also argues on appeal that this Court should assign this case to a different judge on remand because it is evident from the record that the judge harbored animosity against him and would likely be unable to put aside its view of him. We have carefully reviewed the record and have found no evidence that the trial court harbors a bias against Darin Kaeb or that it would be unable to put aside previously expressed views or findings. See *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). Accordingly, we decline to assign this case to a different judge on remand.

## IV. CONCLUSION

The trial court clearly erred when it found that Darin Kaeb filed his motion to remove the conditions on his ability to exercise parenting time in violation of MCR 2.114(D)(2). The record shows that he properly supported his motion with documentary evidence and that the evidence established a proper cause for revisiting the conditions. See MCL 722.27(1)(c). Consequently, the trial court erred when it ordered Darin Kaeb to pay the costs and attorney fees that Stephanie Kaeb incurred to defend the motion as a sanction under MCR 2.114(E). For this reason, we reverse the trial court's decision to order sanctions, vacate the orders requiring Darin Kaeb to pay costs and fees to Stephanie Kaeb, and remand for further proceedings.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Joel P. Hoekstra