*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY M. BLOOM, formerly known as AMY M. OGILVIE,

      Plaintiff-Appellee,

v

ERIC A. OGILVIE,

      Defendant-Appellant.

UNPUBLISHED
September 7, 2023

No. 362448
Alpena Circuit Court
Family Division
LC No. 11-004212-DM

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant, Eric A. Ogilvie, appeals as of right an order denying him custody of his and plaintiff, Amy M. Bloom's, two children, LO and AO. The order also imposed certain conditions before defendant could exercise parenting time. We affirm.

## I. FACTUAL BACKGROUND

In 2012, while defendant served a prison term, the court entered the parties' judgment of divorce and granted plaintiff sole physical and legal custody of the children. Upon his release from prison in 2015, defendant sought parenting time. The court conducted various proceedings and ultimately denied defendant parenting time for failure to comply with psychological treatment, and this Court affirmed that decision. *Bloom v Ogilvie*, unpublished opinion of the Court of Appeals, issued February 12, 2019 (Docket Nos. 342337 and 342354). After this Court's decision, the circuit court conducted an evidentiary hearing to again evaluate the appropriateness of parenting time for defendant. The court ultimately concluded that defendant had not established proper cause or change of circumstances to revisit custody[1] and that further counseling was required before parenting time could commence. On appeal, defendant contends that the circuit court erred by failing to find proper cause or change of circumstances to revisit custody, and

---

[1] As discussed in footnote 6, *infra*, defendant had made some references to a change of "custody."

-1-

therefore, erred by failing to apply all the statutory best-interest factors of MCL 722.23. He also contends that the case should be assigned to a different judge.

## II. STANDARD OF REVIEW

We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003) (quotation marks and citations omitted).]

## III. ANALYSIS

In general, a modification to a parenting-time or custody order may be initiated only if the party seeking the modification shows that it is justified by proper cause or a change of circumstances. MCL 722.27(1)(c); *Marik v Marik (On Remand)*, 325 Mich App 353, 367; 925 NW2d 885 (2018); *Vodvarka*, 259 Mich App at 512-513.[2] MCL 722.27 states, in relevant part:

(1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

\* \* \*

(c) . . . modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . . The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the

---

[2] MCL 722.1101 provides:

"Child-custody determination" means a judgment, decree, or other court order providing for legal custody, physical custody, or parenting time with respect to a child. Child-custody determination includes a permanent, temporary, initial, and modification order. Child-custody determination does not include an order relating to child support or other monetary obligation of an individual.

child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

This requirement serves as a type of "threshold" for commencing the proceedings. See *Corporan v Henton*, 282 Mich App 599, 609; 766 NW2d 903 (2009). However, caselaw indicates that the phrase "proper cause or . . . change of circumstances," see MCL 722.27(1)(c), means something different depending on whether the modification in question amounts to a change in custody or "merely" a change in parenting time.

In the context of a change of *custody*, "proper cause" can be established by a preponderance of the evidence of an appropriate ground that is "relevant to at least one of the twelve statutory best-interest factors[, set forth in MCL 722.23(a)-(*l*),] and [is] . . . of such magnitude to have a significant effect on the child's well-being." *Vodvarka*, 259 Mich App at 512. To establish a change of circumstances sufficient to initiate the modification of custody, the moving party "must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. "This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors." *Id*. at 514.

These *Vodvarka* standards apply where a requested modification of parenting time will result in a change in the child's established custodial environment. *Marik*, 325 Mich App at 367; *Shade v Wright*, 291 Mich App 17, 27; 805 NW2d 1 (2010). MCL 722.27(1)(c) explains that "[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."

Different standards apply to requests for modification of parenting time. *Shade*, 291 Mich App at 25, 27-28. Such requests are subject to "a lesser, more flexible, understanding of 'proper cause' or 'change in circumstances' " than those articulated in *Vodvarka*. *Marik*, 325 Mich App at 367-368 (quotation marks and citation omitted). The less-stringent standards apply if "the request involves a change to the duration or frequency of parenting time[.]" *Kaeb v Kaeb*, 309 Mich App 556, 570; 873 NW2d 319 (2015). The *Shade* Court stated that "the very normal life change factors that *Vodvarka* finds insufficient to justify a change in custodial environment are precisely the types of considerations that trial courts should take into account in making determinations regarding modification of parenting time." *Shade*, 291 Mich App at 30.

The distinction rests on the differences regarding the focus of custody and parenting time. "[T]he primary concern in child custody determinations is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes, [and] the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id*. at 28-29.

If a modification in custody or parenting time would change the child's established custodial environment, the burden is on the moving parent to show by clear and convincing evidence that the modification is in the child's best interests. MCL 722.27(1)(c); *Shade*, 291 Mich

App at 23. If the proposed modification would not change the custodial environment, the parent seeking that modification must "establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id.*

In this case, defendant seems to be arguing that the last physical custody decision was made in 2012 in connection with the divorce and that his release from prison should be considered proper cause and change of circumstances warranting a revisiting of custody. This position is incorrect. As set forth in *Bloom*, unpub op at 3, the circuit court entered orders in 2016 and 2018 that suspended defendant's parenting time. On June 30, 2021, the circuit court indicated in a written order that it would not disturb "the previous parenting time rulings which have been affirmed on appeal" until after it concluded the evidentiary hearing.[3] Any grant of physical custody to defendant would clearly be a modification or amendment to the prior parenting-time orders, MCL 722.27(1)(c), and would effect a change to the children's established custodial environment, because they have lived exclusively with plaintiff for many years, with extremely limited visitations with defendant. Defendant is putting form over substance by arguing that only the 2012 order dealt with custody. When it comes to the physical care of the children, the 2018 order denying the motion to restore parenting time was the last pertinent order that the court, in assessing physical custody, considered whether to modify. If the court were to suddenly grant defendant some type of physical custody such as regular overnights, the children's established custodial environment would change from that put in place by way of the suspension of *all* parenting time.

The comparison for purposes of determining proper cause or change of circumstances relates to the orders in place before the earlier appeal, as specifically stated by the circuit court, or to the suspension of "test" parenting time ordered in October 2020. While there have been some changes since then, such as defendant's treatment with a counselor, John Eagan, and troubling behavioral incidents with the children; "[t]his Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard. Under the great weight of the evidence standard, this Court defers to the trial court's findings of fact" unless the evidence "clearly preponderate[s] in the opposite direction." *Corporan*, 282 Mich App at 605 (quotation marks and citations omitted).

In this case, there continued to be evidence that defendant needed psychological assistance before resuming visitations. Dr. Wayne Simmons[4] recommended that defendant "be involved in therapy designed to help him focus on the way that he had disrupted his own interests and his children's interests." He said that the children should be in therapy as well and that the therapists should collaborate to determine when supervised parenting time should be resumed, with the goal being unsupervised parenting time.

---

[3] The record indicates that the circuit court explicitly vacated in October 2020 an order involving "test" parenting time.

[4] Defendant contends that we should not consider Dr. Simmons's written report. Dr. Simmons's oral testimony alone, however, is sufficient to support our decision in this matter.

Defendant's attorney asked if Dr. Simmons would modify his report if defendant's criminal convictions were overturned because of his having acted in legitimate self-defense when pointing a gun at his neighbor.[5]  Dr. Simmons said:

> It certainly would modify my report . . . *regarding that instance* but there are a variety of times that tragically, I believe, [defendant] has unintentionally rendered himself unavailable to the children.  That is not the only instance.  Now, the argument could be made that if he'd never gone to prison, he wouldn't have violated his parole, but he did.  [Emphasis added.]

Dr. Simmons also said that John Eagan, an outpatient therapist in behavioral health who saw father approximately 12 times, had not had the full picture of the situation involving visitations with defendant because he had not analyzed the children.  On cross-examination, Eagan himself admitted that interviewing the children would be important on this matter and admitted that he had not done so.

Further, Shawn Wygant, a limited-license psychologist proffered by defendant, admitted that defendant had not provided him with police reports or child-protective services reports, and that it would have been better to have had them.  He also admitted that an earlier psychologist, Dr. Ted Stiger, had spoken to others about defendant and that this was something that could be helpful.  Wygant admitted that Dr. Stiger had had information that Wygant did not.  Dr. Stiger had emphasized the need for defendant to get mental-health treatment.

The children's therapist did not think that supervised visitations would be beneficial for the children at this point.  She had seen a decline in functioning in the children once they started receiving letters from defendant.  She also said that she had not seen evidence of plaintiff's having caused parental alienation.  She noted that, in fact, LO viewed defendant as "a hero."  The therapist opined that to get to a point where visitations would be appropriate, defendant needed some "personal mental health treatment" to learn to tone down his emotional intensity.

Defendant has obtained some therapy since the children's therapist made these statements, but his own counselors qualified their testimony because of their failure to have interacted with the children.  Under all the circumstances, the circuit court's ruling that no change of circumstances or proper cause existed to revisit physical custody was not against the great weight of the evidence.[6]

---

[5] This Court has reversed defendant's convictions of felonious assault and felony-firearm. *People v Ogilvie*, unpublished per curiam opinion of the Court of Appeals, issued March 3, 2022 (Docket No. 354355).  However, this Court did not state that defendant was innocent nor that defendant acted in legitimate self-defense; it concluded that the trial court failed to properly instruct defendant's jury warranting retrial.

[6] In the analysis of this issue in his brief on appeal, defendant draws no distinction between physical and legal custody, referring only to "custody."  It is possible that defendant, in arguing that the court should have revisited custody, is referring to *legal* custody.  However, the issue of legal

Defendant addresses the best-interest factors in his appellate brief, but a full analysis of these factors is required only when proper cause or change of circumstances has been established. It is not this Court's role, at this point in the proceedings, to analyze these factors.

The circuit court also made some modifications to parenting time. The court said that, in light of the history of the case, the evidence provided, and the court's opinion regarding Dr. Simmons, the court remained "highly concerned" about modifying parenting time without further professional evaluation. It noted that the current counselor no longer desired to work with the family and that AO had been having difficulties. The court ordered that supervised parenting time cease "subject to the procurement of another evaluation of the children and [defendant]." The court added:

> Resuming parenting time, supervised or otherwise, will be contingent upon the parties [sic] consent to review all of the prior psychological reports, including those from Dr. Stiger [sic], Dr. Simmons and Shawn Wygant. The expert shall recommend the appropriate amount of parenting time, if any, and in what manner, based on the counseling sessions with the minor children. As one of the minor children is currently under the jurisdiction of the juvenile court, the payment of the services for family counseling shall be by the [c]ourt through that mechanism.

The circuit court implicitly concluded that the threshold had been met to revisit parenting-time conditions. Defendant does not appear to take issue with the way the court dealt with parenting time. He does not address the parenting-time factors of MCL 722.27a(7) and also states, "Further, [defendant] requests that this Court consolidate this appeal with the soon to be filed application for leave to appeal so that this Court can adjudicate custody and parenting time in the same opinion."

We do not conclude that the circuit court's parenting-time order was inappropriate. MCL 722.27a states, in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a

---

custody was not properly developed below. Defendant contends on appeal that he sought joint physical *and* legal custody. He cites page 121 of the transcript of the February 6, 2020 hearing. That page of the transcript reflects that defendant stated that he requested "[p]arenting time" and thought that joint legal custody was "something we should work towards." He said earlier in the hearing that he was requesting "custody," but his *motions* had been geared toward parenting time, and the context of the hearings make clear that he was focused on physically spending time with the children. Defendant's attorney stated in his brief after the conclusion of evidence-taking that joint legal custody was appropriate, but again, the evidentiary hearing did not focus on this. Further, on appeal it is evident that defendant's focus is on physical custody. Significantly, defendant does not develop a reasoned argument regarding legal custody. See, e.g., *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (discussing inadequate briefing). For these reasons, we decline to address the issue of legal custody.

strong relationship with both of his or her parents.  Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

* * *

(3)  A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health.

* * *

(7)  The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

(a)  The existence of any special circumstances or needs of the child.

(b)  Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c)  The reasonable likelihood of abuse or neglect of the child during parenting time.

(d)  The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e)  The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f)  Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g)  Whether a parent has frequently failed to exercise reasonable parenting time.

(h)  The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i)  Any other relevant factors.

* * *

(9) A parenting time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent, including 1 or more of the following:

* * *

(i) Any other reasonable condition determined to be appropriate in the particular case.

Given the use of the word "may" in MCL 722.27a(7), the circuit court had discretion to consider the parenting-time factors it deemed applicable, and had authority to impose reasonable conditions upon parenting time. Evidence indicated that interactions with defendant could be damaging to the children's mental health. We find no ground on which to reverse the circuit court's parenting-time decision.

In his final prayer for relief, defendant contends the case should be reassigned to a different judge for any further proceedings. We disagree.

In *Kaeb*, 309 Mich App at 573-574, this Court stated:

Darin also argues on appeal that this Court should assign this case to a different judge on remand because it is evident from the record that the trial court harbored animosity against him and would likely be unable to put aside its view of him. We have carefully reviewed the record and have found no evidence that the trial court harbors a bias against Darin or that it would be unable to put aside previously expressed views or findings. Accordingly, we decline to assign this case to a different judge on remand. [Citation omitted.]

In arguing for reassignment on remand, defendant mentions the judge's involvement when he was a prosecuting attorney in certain 2016 criminal proceedings involving a complaint by plaintiff against defendant. But the chief judge adequately explained why this circumstance did not require disqualification, stating that the judge, at the arraignment in question, merely repeated facts stated by others and had no personal knowledge of any pertinent information; and, most importantly, that the judge simply had no personal recollection of representing the state at the arraignment or any other proceedings pertaining to the case. Further, the case against defendant was dismissed and the judge (then serving as prosecutor) signed an order of *nolle prosequi*.[7]

---

[7] Defendant filed two separate motions to disqualify the judge. Both were denied by the circuit judge and by the chief judge. Defendant is explicitly *not* arguing that reversal is required for the reason that his two motions to disqualify the judge were denied. He states that he "never appealed to this Court the orders denying the disqualification," and he is merely requesting "[r]emand for the assignment of a new judge" going forward.

Defendant also alleges that the circuit judge is biased because he repeatedly denied defendant parenting time. In *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004), this Court stated:

> Much of plaintiff's argument concerns the fact that the trial court allowed defendant to remove the children from the state. Plaintiff argues that the court demonstrated bias in making this ruling and in not granting him an automatic stay following the ruling. However, we will not remand to a different judge merely because the judge came to the wrong legal conclusion. Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying. Rather, *plaintiff must demonstrate that the judge would be unable to rule fairly on remand given his past comments or expressed views*. Nothing in the record supports a finding that the trial judge could not put his previous rulings out of his mind. Moreover, the trial judge did not make any comments on the record indicating any expressed bias. Therefore, plaintiff has not met the standard required to remand to a different judge. [Citation omitted; emphasis added.]

Here, there were repeated rulings against defendant but the record does not reveal demonstrated bias. Reassignment, therefore, is not warranted.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford