*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PEB.

CAROLYN BELSITO,

UNPUBLISHED
August 15, 2025
9:14 AM

Petitioner-Appellee,

v

No. 374721
Kent Probate Court
LC No. 17-925655-MI

PEB,

Respondent-Appellant.

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent, PEB, appeals as of right the probate court's order requiring respondent to undergo involuntarily mental-health treatment. Respondent argues that he is not a person requiring treatment within the meaning of MCL 440.1401(1) and that the trial court improperly held a hearing despite respondent's request for a deferral. We affirm.

## I. BACKGROUND

In January 2025, respondent's mother petitioned the trial court for hospitalization of respondent. Petitioner alleged that respondent had been "destroying property in the home" and "made threats to slit [his father's] throat and other threats to harm [his family]." Petitioner further claimed that respondent had been talking to himself, was displaying threatening behavior, and had delusional thinking, including thinking that his father was stalking him. Respondent had "been yelling at strangers on the street," stating that he was "being abused," and asking for others to "help him." Petitioner claimed that respondent refused to seek mental-health treatment.

Two clinical certificates were filed in support of the petition. The first certificate was submitted by a psychiatrist, Dr. Umer Farooq, who concluded that respondent was suffering from an "unspecified mood disorder." Among Dr. Farooq's opinions were that respondent's judgment was impaired by that mental illness and that he presented a substantial risk of significant physical or mental harm to himself or others. In support of his opinions, Dr. Faroog reported that respondent "present[ed] dysphoric," "seem[ed] to have limited insight into his illness and need for treatment," and "ha[d] made threatening remarks to harm self and family." He was also reported to be having

-1-

paranoid thoughts, irritability, was minimizing his symptoms and had no insight into his threatening behaviors. Dr. Farooq noted that respondent needed a "higher level of care for safety and stabilization of his mood," and recommended hospitalization, only.

The second certificate was filed by another psychiatrist, Dr. Sameh Dwaikat. Dr. Dwaikat concluded that respondent had schizoaffective disorder bipolar type. Dr. Dwaikat reported that "[t]he patient present[ed] with labile mood, pressured speech, tangential thought process, irritability, [and] anger." Further, Dr. Dwaikat noted that respondent made threats against his family, including threatening to slit respondent's father's throat. Dr. Dwaikat opined that respondent had no insight into his mental illness and said he refused to accept medication. His recommendation was a combination of hospitalization and assisted outpatient treatment. Respondent requested to defer a court hearing on the petition, and requested combined hospitalization and outpatient treatment; however, the next day, the hospital's designee filed a demand for hearing.

At the beginning of the hearing, the trial court noted that the case had originally been resolved by a deferral, but there was "a demand for hearing for noncompliance." Respondent orally moved for dismissal, essentially arguing that the demand for hearing contained no basis for the demand, but the court denied the motion and decided to take testimony from a doctor.[1]

The trial court heard testimony from Dr. Dwaikat, who diagnosed respondent with schizoaffective disorder bipolar type, chronic nonadherence, and cannabis-use disorder. He testified that when respondent arrived at the emergency room, "he appeared intrusive, labile, perseverative on pro [sic] treatment by treatment staff," and "was unable to give a meaningful conversation on any topic." Respondent was "refusing care in general," including refusing to allow any blood draws and refusing a COVID-swab.

Before Dr. Dwaikat examined respondent for the first time, a nurse "warned" him that respondent had been talking about Dr. Dwaikat and other providers who had treated him in the past. Respondent claimed that the providers had "abused him." When Dr. Dwaikat spoke with respondent, it was "very apparent" that respondent was paranoid, and respondent told Dr. Dwaikat he did not trust him or any other provider. Dr. Dwaikat testified that, when he asked respondent about threats that respondent made at home, respondent "did not want to discuss any of those circumstances and seemed to shift blame on his parents' fighting." Respondent denied threatening "to slit anybody's throat." Dr. Dwaikat also observed that respondent was "exhibiting severe mood lability" and that respondent would start sobbing when asked a question that he could not answer. Dr. Dwaikat asked if he could speak with respondent's parents, and respondent stated that

---

[1] The second paragraph of the form includes two boxes that could potentially be checked, the first of which said petitioner is demanding a court hearing because "the individual refuses to accept prescribed treatment," and the second of which that said petitioner is demanding a court hearing because "the individual orally demanded a hearing." The court found that that respondent had obviously not requested the hearing, meaning that the designee must have advertently failed to check the first box.

Dr. Dwaikat could speak to them, "but it ha[d] to be in front of him, because he d[id] not trust what they have to say about him behind his back."

With regard to medication, Dr. Dwaikat testified that respondent "eventually agreed to start taking Haloperidol." Respondent was prescribed 10 milligrams and "begged" not to have the dosage increased. Dr. Dwaikat testified that this dosage was "definitely not enough." Respondent was "frequently observed yelling at unseen people in his room, making threats against the physician—this physician and other physicians who have treated him before, making delusional statements about this physicians and other physicians abusing him, bullying him, [and] keeping him in the hospital without good cause." Dr. Dwaikat testified that respondent stated several times that he would not take medication once he left the hospital; therefore, Dr. Dwaikat requested a court order "to guarantee adherence in the future." In addition, Dr. Dwaikat testified that they needed to obtain lab draws in the hospital and to increase his therapeutic dose up to 20 milligrams a day. Dr. Dwaikat testified that respondent had no insight into his need for treatment. He stated that "[respondent] pretends that he is coherent and adherent with his medications" but, "unfortunately, whenever we discuss increasing the dose, he becomes vary labile, illogical, and cannot tell me why he doesn't want to take the meds." Further, Dr. Dwaikat testified that, in the hospital, respondent was trying to appear better than he is and minimizing his symptoms. He recommended hospitalization, which he opined was the least restrictive form of treatment at that time.

On cross-examination, Dr. Dwaikat was asked about respondent's request for a deferral, and Dr. Dwaikat testified that he would not accept a deferral for the various reasons discussed on the record, including respondent stating that he will not take medication upon leaving the hospital, that he does not have mental illness, and his labile mood. Dr. Dwaikat also opined that respondent exhibited no improvement after receiving 10 milligrams of Haloperidol for at least the last four days. On redirect, Dr. Dwaikat was asked if respondent had been compliant with the blood draws or any other things needed to treat him appropriately. Dr. Dwaikat testified that he had not, and agreed that this had been the case since he signed the deferral document. In fact, Dr. Dwaikat said he had been notified that same day to order a series of blood tests upon the court ordering treatment.

The trial court also heard testimony from respondent, who testified that he was "trying to cooperate" when he came to the hospital. Respondent requested to be "treated by a physician that [he] did not have prior history with," but the hospital denied his request. On the basis of his understanding of what had been prescribed, respondent believed that he had complied with his treatment. Respondent thought that Dr. Dwaikat was "exaggerating" about respondent's mood and their conversations. With regard to blood draws, respondent testified the only blood draws that had been ordered were a hemoglobin A1C and a lipid panel, which were ordered when he first arrived, and which he refused because an internal medicine physician said it was unnecessary lab work. Since then, he claimed, "no one has explained to me anything about needing lab work," and he denied refusing any blood draws after signing the deferral. Respondent said that he would continue to take his medications when he left the hospital and thought that they helped him. When the trial court asked respondent if he suffered from schizoaffective disorder bipolar subtype, respondent disagreed with that diagnosis. Respondent admitted that he suffered from a mental illness, but he did not believe that "it is a mental illness that requires inpatient hospitalization." He denied the allegations about destroying property or threatening to slit a family member's throat.

At the conclusion of the hearing, the trial court found by clear and convincing evidence that respondent was a person requiring treatment under the Mental Health Code, MCL 330.1001 *et seq*. The trial court found that respondent had threatened his parents and had destroyed property. It also found that respondent did not understand his need for treatment, did not embrace his diagnosis, and had refused medication. The trial court also found that respondent's unwillingness to voluntarily participate in treatment that is necessary on the basis of competent clinical opinion to prevent a relapse or a harmful deterioration of his condition presented a substantial risk of significant physical harm to respondent and others, and particularly mental harm to respondent. Accordingly, the trial court granted the petition and ordered hospitalization of respondent.

Respondent now appeals.

## II. STANDARDS OF REVIEW

We review a probate court's dispositional decisions for an abuse of discretion. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id*. at 329. However, we review a probate court's factual findings for clear error. *Id*. at 328. A probate court's "findings are clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 329. "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). To the extent that resolution of these issues requires interpretation and application of statutes, "[t]his Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules to the facts." *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015).

## III. ANALYSIS

The trial court did not abuse its discretion by holding a hearing despite respondent's earlier request for a deferral and did not err by determining that respondent was a "person requiring treatment" under MCL 330.1401(1).

## A. DEFERRAL

MCL 330.1455(6) allows an individual to defer a hearing regarding a petition under the Mental Health Code. Once a request for a deferral and stipulation that the individual agrees to participate in treatment has been properly filed, "the court shall temporarily defer the hearing." MCL 330.1455(7). The trial court "does not have discretion regarding whether to defer the hearing once it has received the stipulation and request." *In re Moriconi*, 337 Mich App 515, 525; 977 NW2d 583 (2021). However, [i]f the individual, at any time during the period in which the hearing is being deferred, refuses the prescribed treatment . . . , treatment shall cease, the hospitalized individual shall remain hospitalized with the status of the subject of a petition under section 434, and the court shall be notified to convene a hearing under [MCL 330.1452(1)(d)]." MCL 330.1455(8).

Respondent argues that Dr. Dwaikat did not give him a chance to participate in treatment voluntarily and improperly relied on petitioner's claims that respondent would not take medication outside of the hospital, when, in fact, respondent was taking his medication as prescribed during

the deferral period. Respondent argues that the trial court erred by holding a hearing despite his compliance and right to a deferral. We disagree.

The trial court did not abuse its discretion by holding a hearing on the petition for mental-health treatment after the hospital filed a demand for hearing. At the beginning of the hearing, the trial court recognized that the case had originally been resolved by a deferral, but there was now a demand for hearing on the basis of noncompliance. MCL 330.1455(8) clearly allows for a hearing under these circumstances because the testimony of Dr. Dwaikat showed that respondent was not compliant with treatment after signing the deferral. Although respondent argues that he complied with his treatment, Dr. Dwaikat's testimony established that respondent resisted increasing the dose of his medication. Respondent also did not agree with his diagnosis and refused a blood draw. Respondent argues that Dr. Dwaikat impermissibly relied on respondent's mother's claims that he would not take medication outside of the hospital, but Dr. Dwaikat also testified that respondent himself stated several times that he would not take medication once he left the hospital. MCL 330.1455(6) requires that an individual seeking to defer a hearing "accept treatment as may be prescribed for the deferral period," and the evidence shows that respondent was not accepting treatment. Therefore, the trial court did not abuse its discretion by holding a hearing despite respondent's earlier request for a deferral.

Respondent also takes issue with the demand for hearing form submitted in this case. While the demand for hearing form has boxes that could be checked to indicate that the individual refuses to accept treatment or that the individual orally demanded a hearing, neither box was checked. Again, the trial court reasoned, under these circumstances, that the hospital's designee inadvertently failed to check the box indicating that the individual refused to accept treatment. The court's reasoning proved correct when Dr. Dwiakat testified at the hearing that respondent had refused treatment (which was why a hearing was demanded following the request for deferral).

## B. PERSON REQUIRING TREATMENT

The Mental Health Code sets forth the procedure for requesting an order of involuntary mental-health treatment, generally referred to as civil-commitment proceedings. MCL 330.1400 *et seq.*; *In re Portus*, 325 Mich App 374, 382; 926 NW2d 33 (2018). "Any individual 18 years of age or over may file with the court a petition that asserts an individual is a person requiring treatment." MCL 330.1434. To support a court order for mental-health treatment, a respondent must qualify under at least one subsection of MCL 330.1401(1). Mental illness is defined as a "substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

A judge or jury must find that an individual is a person requiring treatment by clear and convincing evidence. MCL 330.1465.

> Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).]

We defer to the trial court "on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Portus*, 325 Mich App at 397.

Respondent does not dispute that he had a mental illness, but argues that he is not a "person requiring treatment." Respondent argues that his agreement to a deferral shows that he was not a danger to himself or others, and that petitioner's unsubstantiated claims that respondent made threats were not sufficient to establish that respondent presented a substantial risk of harm. Therefore, respondent argues that there was not clear and convincing evidence that he was a person requiring treatment under MCL 330.1401(1)(a) or (c). We disagree.

A person can qualify as a "person requiring medical treatment" under MCL 330.1401(a), (b), or (c).

To qualify as a "person requiring treatment" under MCL 330.1401(1)(a), an individual must have a mental illness, and as a result of that illness, "can reasonably be expected within the near future to intentionally or unintentionally harm himself . . . or another individual" and have "made significant threats that are substantially supportive of the expectation."

First, there is no dispute in this matter that respondent has a mental illness as defined by MCL 330.1400(g). As previously noted, respondent's diagnoses included schizoaffective disorder bipolar type and chronic nonadherence. Also, respondent did not contest that he had a mental illness in the trial court, he simply argued that it did not require hospitalization - he likewise does not contest that finding on appeal.

Second, respondent's threats to his family, and in particular the threat to slit his father's throat, are significant threats. Although respondent argues that these threats were simply unsubstantiated, Dr. Dwaikat testified that respondent similarly made frequent threats to his healthcare providers in the hospital. Petitioner also alleged that respondent had been "yelling at people on the street" asking for help, and, in the hospital, respondent was observed "yelling at unseen people in his room" and claiming that he was being abused by hospital staff. These similarities support petitioner's allegations. Also, while the allegations contained in the petition, and its attachments, may have constituted hearsay, which is prohibited under MRE 802 unless the rules of evidence provide otherwise, the hearsay exception in MRE 1101(b)(10) applies to this case. Under MRE 1101(b)(10), in a hearing brought under MCL 330.1400, *et seq*, "the court may consider hearsay data that are part of the basis for the opinion presented by a testifying mental health expert." Also, under MCL 330.1459(2),

> [t]he court shall receive all relevant, competent, and material evidence which may be offered. The rules of evidence in civil actions are applicable, *except* to the extent that specific exceptions have been provided for in this chapter or elsewhere by statute or court rule." (emphasis added).

Moreover, we give broad deference to the credibility determinations of the trial court, which clearly did not believe respondent's testimony on this issue. See *In re Portus*, 325 Mich App at 397. Respondent's threats, in combination with testimony about respondent's paranoia,

delusional thinking, and labile or unstable mood, established a reasonable expectation of harm to himself or others; therefore, the trial court did not err by finding that respondent qualified as a person requiring treatment under MCL 330.1401(1)(a).

Under MCL 330.1401(1)(c), a "person requiring treatment" is defined as

[a]n individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

As discussed previously, there is sufficient evidence that respondent was not complying with recommended treatment. Dr. Dwaikat testified that respondent's current dosage of medication was "not enough," yet respondent resisted any increase in dosage. Dr. Dwaikat stated that when discussing increasing the dosage, respondent was unstable, illogical, and could not give a reason why he should not take a higher dosage. Respondent's lack of insight into his mental illness and his need for treatment presented a substantial risk of physical harm to others and mental harm to respondent. Dr. Dwaikat testified that respondent's symptoms were not being addressed with his current dose of medication and failure to address respondent's symptoms of unstable mood, irritability, and paranoia would likely lead to respondent making further threats toward others. Therefore, the trial court did not err by finding that respondent also qualified as a "person requiring treatment" under MCL 330.1401(1)(c).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace