*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRICIA WINKLER,

        Plaintiff-Appellant,

v

JOHN EDWARD WINKLER,

        Defendant-Appellee.

FOR PUBLICATION
May 13, 2026
1:31 PM

No. 377570
Roscommon Circuit Court
LC No. 2018-723903-DM

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

KOROBKIN, P.J.

Plaintiff, Tricia Winkler, appeals by right the trial court's order awarding defendant, John Edward Winkler, sole legal custody of their minor son, denying plaintiff's request to change the child's school, and accordingly denying plaintiff's request to change the parties' parenting time arrangement. On appeal, plaintiff challenges the trial court's exclusion of evidence at the de novo hearing, the trial court's best-interest findings, and the trial court's order requiring the parties to undergo psychological evaluations before filing future motions regarding parenting time or custody. For the reasons that follow, we detect no reversible error in the trial court's evidentiary rulings or its best-interest determinations, but we reverse the portion of the court's order requiring the parties to complete psychological evaluations before filing future motions regarding parenting time or custody.

## I. BACKGROUND AND FACTS

The parties divorced in 2019, and the judgment of divorce granted the parties joint physical and legal custody of the one child they share. At the time of the divorce, the parties and the child resided in Houghton Lake, but in 2022, plaintiff moved 98 miles from Houghton Lake to St. Johns after accepting a teaching position there. Defendant and the child continued to reside in Houghton Lake.

In September 2022, plaintiff filed a motion requesting that the court allow the child to enroll in the St. Johns school system and that the court grant plaintiff sole legal custody, primary physical custody, and "reasonable parenting time." Following hearings presided over by a referee, the trial court denied plaintiff's request to change the child's school and ordered that, during the

school year, the child would primarily reside with defendant and plaintiff would have parenting time every other weekend, with this arrangement being vice versa during the summer. The parties thus continued to share joint legal and physical custody of the child.

Plaintiff filed the motion underlying this appeal in June 2024, requesting that she be granted sole legal custody, that the child's school designation be changed from Houghton Lake to St. Johns, and that the parties' parenting time be accordingly altered such that the child would be under plaintiff's care during the school year. Plaintiff's motion asserted that defendant was increasingly making significant decisions regarding the child without consulting plaintiff and that defendant lacked effective parenting skills. Defendant answered plaintiff's motion in August 2024, requesting that the court deny plaintiff's requested relief, grant him sole legal and physical custody, and order that both parties undergo psychological evaluations.

A referee presided over three evidentiary hearings on plaintiff's motion during which he heard testimony from the parties, the child's pediatrician, and the child's counselor, among others. The testimony addressed matters including the child's physical and mental health, the parties' conflicts related to the child's health treatments, and the child's school attendance, performance, and behavior. The referee issued his findings in April 2025 and determined that it was in the child's best interests that the child remain in Houghton Lake schools and that defendant have sole legal custody.[1] The referee thus ultimately recommended: (1) that defendant have sole legal custody of the child; (2) that the child remain in the Houghton Lake school system and accordingly "that there [wa]s no need to alter the established parenting time schedule"; (3) that the physical custody arrangement not be modified; and (4) "[i]n the absence of emergency circumstances[,] [b]oth parties are to undergo psychological evaluations prior to the inception of future parenting time/custody motions."[2]

After plaintiff filed objections to the referee's findings, the trial court held a de novo hearing in September 2025. The trial court began the hearing by admitting only some of the evidence plaintiff sought to introduce at the hearing. The court then considered plaintiff's various objections, echoing many of the concerns expressed by the referee and explicitly agreeing with many of the referee's findings. The trial court then concluded, based on those reasons and its review of the record, that the referee had conducted a thorough review of the best-interest factors, that the referee's recommendation accounted for all the factors, and that the referee made no error. The court thus denied plaintiff's objections and adopted the referee's recommendation as its order.

This appeal followed.

---

[1] The referee had concluded that there was an established custodial environment with both parents, and that changing the child's school and the parties' parenting arrangement would not necessarily alter this environment, but that a change to sole legal or physical custody of the child would.

[2] Following the conclusion of testimony at the final evidentiary hearing, the referee clarified that he would not order the parties to undergo psychological evaluations before issuing a recommendation, as he did not want the recommendation to be further delayed.

## II. STANDARDS OF REVIEW

"In matters involving child custody," we will affirm "all orders and judgments of the circuit court . . . unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." *Kuebler v Kuebler*, 346 Mich App 633, 652-653; 13 NW3d 339 (2023) (quotation marks and citation omitted). This Court applies the abuse-of-discretion standard "to the trial court's discretionary rulings such as custody decisions" and "reviews questions of law for clear legal error." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020) (quotation marks and citation omitted). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted). In addition, "[t]he great weight of the evidence standard applies to all findings of fact" and "[a] trial court's findings regarding each best interests factor." *Id.* at 242, 245 (quotation marks and citations omitted). Under the great-weight-of-the-evidence standard, this Court will affirm a trial court's findings "unless the evidence clearly preponderates in the opposite direction." *Id.* at 242 (quotation marks and citation omitted). We "review de novo issues involving the proper interpretation and application of statutes and court rules." *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023).

## III. ANALYSIS

## A. EXCLUSION OF EVIDENCE

Plaintiff first argues that the trial court abused its discretion by preventing her from presenting live evidence at the de novo hearing. We conclude that the trial court made no reversible error in excluding evidence that plaintiff sought to present.

Upon a timely "written request of either party or upon motion of the court," a trial court is required to "hold a de novo hearing on any matter that has been the subject of a referee hearing." MCL 552.507(4). MCL 552.507(5) in turn provides:

> A hearing is de novo despite the court's imposition of reasonable restrictions and conditions to conserve the resources of the parties and the court if the following conditions are met:
>
> (a) The parties have been given a full opportunity to present and preserve important evidence at the referee hearing.
>
> (b) For findings of fact to which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to supplement that evidence with evidence that could not have been presented to the referee.

MCR 3.215(F)(2) further "governs the conduct of the judicial hearing," *Butters v Butters*, 342 Mich App 460, 468; 995 NW2d 558 (2022), vacated in part on other grounds 510 Mich 1096 (2022), providing that a trial court, "[t]o the extent allowed by law, . . . may conduct the judicial hearing by review of the record of the referee hearing, but . . . must allow the parties to present live evidence," MCR 3.215(F)(2). MCR 3.215(F)(2) also allows a court "in its discretion" to:

(a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;

(b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;

(c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing; [and]

(d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court.

MCR 3.215(F)(2)(a) through (c) thus "permit the trial court to narrow the disputed issues to those for which an objection was filed and otherwise control the types of evidence to be admitted at the hearing in the interest of judicial economy." *McGregor*, 346 Mich App at 103. In sum, although a "trial court may ultimately arrive at a new decision 'based entirely on the record of a previous hearing, including any memoranda, recommendations, or proposed orders by the referee,' " at a de novo hearing, "the court must allow the parties to present live evidence, subject to the restrictions permitted by MCR 3.215(F)(2)." *Butters*, 342 Mich App at 468-469, quoting MCL 552.507(6)(a).

The scope and rationale of plaintiff's challenge to the trial court's evidentiary rulings at the de novo hearing are somewhat unclear. To the extent plaintiff asserts that the trial court erred by restricting her ability to present live evidence on any issue she so wished, this challenge is unavailing. For the trial court was required to allow plaintiff to "present live evidence, *subject to the restrictions permitted by MCR 3.215(F)(2)*." *Butters*, 342 Mich App at 469 (emphasis added). And MCR 3.215(F)(2) allows a trial court to "prohibit a party from presenting evidence on findings of fact to which no objection was filed" and "from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing." MCR 3.215(F)(2)(a) and (c); see also *McGregor*, 346 Mich App at 103. The trial court thus permissibly exercised its discretion under MCR 3.215(F)(2) in prohibiting plaintiff from presenting any live evidence she so wished.

We are also unpersuaded by plaintiff's argument that she is entitled to reversal because the trial court violated MCL 552.507 and MCR 3.215 by excluding the specific evidence she sought to introduce. At the de novo hearing, plaintiff's counsel asserted that there was "new evidence that was not available at the time of the [referee] hearing that [she] wish[ed] to present" and requested that plaintiff be permitted to testify. When the trial court inquired as to what evidence plaintiff sought to testify to, plaintiff referenced the child's "substantial" weight gain and the refusal by the child's pediatrician's staff to provide plaintiff information after defendant provided the child's pediatrician the referee's recommendation. The trial court allowed plaintiff to present evidence of the pediatrician issue but denied admission of the weight-gain evidence. When the trial court later asked plaintiff's counsel whether there was "anything else that [she would] like to say regarding the objection," plaintiff's counsel responded, "Only the fact that [the child is] eating himself to death. Other than that, no." Thus, because only the weight-gain evidence was excluded,

-4-

our inquiry is limited to whether the trial court abused its discretion by excluding that specific evidence.

Plaintiff failed to specify, either in the trial court proceedings or on appeal, whether the evidence of the child's weight gain she referred to during the de novo hearing existed at the time of the final referee hearing. Certainly, if plaintiff sought only to present evidence showing generally that the child was overweight, the trial court properly concluded that it could prohibit this evidence. For that evidence was clearly "available at the referee hearing," MCR 3.215(F)(2)(c), as illustrated by the wealth of testimony during the three evidentiary hearings on this very subject. If plaintiff sought to present evidence of the child's increase in weight since the final referee hearing, however, the trial court likely did err in rejecting the admission of this evidence. Again, MCR 3.215(F)(2) allows a court to "prohibit a party from introducing new evidence . . . unless there is an adequate showing that the evidence was not available at the referee hearing." Because any evidence of the child's increase in weight since the final referee hearing was by definition unavailable at that hearing, any such evidence was improperly excluded.

Nonetheless, a trial court's error in excluding evidence "is not ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A); see *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994) (providing that the harmless error standard applies in child custody cases). The referee heard extensive testimony regarding the child's weight and associated health issues, and the trial court clarified that it had "reviewed everything." The referee and trial court also both discussed the child's weight in issuing their best-interest findings. Given the significant evidence regarding the child's weight presented at the evidentiary hearings and both the referee's and trial court's obvious consideration of this evidence, we are unconvinced that further evidence of, in plaintiff's counsel's words, "[o]nly the fact that [the child is] eating himself to death," would have altered the trial court's determinations on the requests before it. We therefore conclude that any error in excluding additional evidence of the child's gain in weight was harmless and does not warrant disturbing the trial court's order. See MCR 2.613(A).

## B. BEST INTERESTS

Plaintiff next contests, on various grounds, the trial court's best-interest determinations that the child should remain in the Houghton Lake school system and that defendant should have sole legal custody. We detect no error in these determinations warranting relief.

A trial court may "modify or amend 'its previous judgments or orders[,]' but only for 'proper cause shown or because of change of circumstances.' " *Kaeb v Kaeb*, 309 Mich App 556, 567; 873 NW2d 319 (2015), quoting MCL 722.27(1)(c). A trial court cannot "modify or amend a previous judgment or order or issue a new order 'so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.' " *Kaeb*, 309 Mich App at 567, quoting MCL 722.27(1)(c). If the modification or amendment would not change the child's established custodial environment, then it must be shown to be in the child's best interests by a preponderance of the evidence. *Pierron v Pierron*, 486 Mich 81, 89-90; 782 NW2d 480 (2010). Courts evaluate a child's best interests using the factors set forth in MCL 722.23:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Even "when a trial court is considering a decision that will not modify the established custodial environment, . . . it must consider the applicability of all the [best-interest] factors." *Pierron*, 486 Mich at 91. That said, "although [a] trial court must determine whether each of the best-interest factors applies," if a "trial court determines that a particular factor is irrelevant to the immediate issue, it need not make substantive factual findings concerning the factor beyond this determination, but need merely state that conclusion on the record." *Id.* at 91, 93. In addition, a trial court's factual findings and conclusions under the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 429, 452; 705 NW2d 144 (2005).

Also, in cases where a referee has made a custody recommendation, a trial court may uphold the recommendation "without making any independent findings concerning the child's best interests." *Rivette v Rose-Molina*, 278 Mich App 327, 330; 750 NW2d 603 (2008). But the trial court is still required "to determine independently what custodial placement is in the best interests of the children" by "either satisfying itself that the referee considered the best interest of the child, or [by] making its own findings regarding the best interest of the child." *Id.* at 332-333.

## 1. THE SCHOOL DETERMINATION

Returning to the present case, plaintiff contends that the trial court's determination that remaining in the Houghton Lake school system was in the child's best interests was against the great weight of the evidence. To summarize the referee's and trial court's analyses, under best-interest factor (i), the referee found that the child had no "preference when it comes to schools" and was unconvinced "by any evidence that [the child's] academic or social situations would improve or deteriorate regardless of what school he is in"; under factor (h), the referee stated that "[b]oth parents have participated in [the child's] education at Houghton Lake"; and under factor (j), the referee was concerned that plaintiff could improperly "alter [the child's] academic and extra-curriculars" and influence "an educational or disciplinary board" given her association with the schools in St. Johns and plaintiff's prior request that the child's counselor alter her notes regarding plaintiff's demeanor during a parental check-in session. The referee noted that the child "has been in Houghton Lake educational system his entire life, and there simply was not any evidence that was presented that would lead the [c]ourt to believe that [the child] would be any more successful in St. Johns than he has been in Houghton Lake." At the de novo hearing, the trial court judge shared the referee's concern regarding plaintiff's attempt to interfere with the child's counselor and her potential influence "in a school environment where she has more connections," and further noted that the child had no school preference, and that defendant attempted to help the child improve his grades. Both the referee and the trial court judge therefore concluded that the child should remain at Houghton Lake.

We find no error in the referee's recommendation and the trial court's order that the child remain in the Houghton Lake school system. See *Bofysil*, 332 Mich App at 242, 245; *Kuebler*, 346 Mich App at 652-653. As the referee and trial court indicated, plaintiff's past interference with the child's counselor cautioned against placing the child in an educational environment where plaintiff had a greater opportunity to exercise more influence, particularly when contrasted against the parties' common interest in the child's education in Houghton Lake schools. Additionally, although on appeal plaintiff highlights opportunities she submits are only available in the St. Johns school system, the trial court was not required to find that these somewhat minor differences between the school systems warrant placing the child in a new educational environment as a teenager, especially given all the other life changes the child has experienced related to his parents' divorce. The trial court's decision is further supported by the child's own indifference to the school he attends. Thus, without more evidence that the child would be better situated in the St. Johns

school system, we find no error in the trial court's determination that it was in the child's best interests to remain in the familiar educational environment provided by Houghton Lake schools.[3]

Plaintiff additionally claims that the referee and the trial court judge made critical errors in how they conducted their best-interest analyses regarding the child's school. For instance, plaintiff argues that the trial court erred by failing to independently address the best-interest factors. This argument lacks legal merit and record support. As we have described, a trial court is required to "satisfy[] itself that the referee considered the best interest of the child, or mak[e] its own findings regarding the best interest of the child." *Rivette*, 278 Mich App at 333. The trial court here explicitly found that the referee conducted a thorough review of the best-interest factors, taking all of them into account and making no error, thus "satisfying itself that the referee considered the best interest of the child." *Id.* Further, despite being under no obligation to "mak[e] any independent findings concerning the child's best interests," the trial court detailed some of its own best-interest findings, including that the child does not like school and that it was "disturbing" that plaintiff referred to the child as "an attention-seeking wild card" in a text. *Id.* at 330. Thus, the trial court fulfilled its independent obligation to determine what was in the child's best interests. See *id.* at 332-333.

In a similar vein, plaintiff contends that the trial court erred by adopting the referee's recommendation despite the referee not applying all the best-interest factors. The record shows, however, that the referee indeed considered the applicability of all the best-interest factors as required. See *Pierron*, 486 Mich at 91. For the referee stated that plaintiff failed to "overcome the preponderance of the evidence burden on *any* of the best interest factors that a change in [the child's] schooling is in his best interest." Although the referee only focused on factors (h), (i), and (j) as the most relevant to his analysis, this approach was proper. Our Supreme Court has explained that when "a proposed important decision affecting the welfare of the child will not modify the established custodial environment, evaluating best-interest factors that are irrelevant to the particular issue before the court distracts from the proper focus of the proceeding and poses the risk that one parent's preference will prevail even though that preference is not in the best interests of the child." *Id.*

Plaintiff further faults the trial court for failing to cite various facts she considers relevant. But as we have noted, a trial court need not address "every piece of evidence entered and argument raised by the parties" in issuing its factual findings and conclusions in a best-interest analysis. *MacIntyre*, 267 Mich App at 452. And regardless, that the trial court did not explicitly reference the facts plaintiff deems relevant does not mean that the trial court's decision was against the great weight of the evidence. Both the referee and trial court accounted for a wide variety of evidence

---

[3] Highlighting evidence of the child's weight gain and associated health issues, plaintiff also takes issue with the trial court's failure to find that best-interest factor (c) weighed in her favor regarding the child's school. Plaintiff does not explain, however, how the child's weight and associated health issues, and factor (c) more generally, are relevant to whether the child should attend a different school. We also cannot see why these considerations would be relevant to which school it would be in the child's best interests to attend, and thus find no error in the trial court's failure to find that factor (c) favored plaintiff.

in concluding that the child remaining in the Houghton Lake school system was in the child's best interests. As the trial court did not "ma[k]e findings of fact against the great weight of evidence or commit[] a palpable abuse of discretion or a clear legal error on a major issue," in so determining, *Kuebler*, 346 Mich App at 652-653, we affirm its order that the child is to remain in Houghton Lake schools.

## 2. THE LEGAL CUSTODY DETERMINATION

Plaintiff next contends that the trial court's order granting legal custody to defendant was against the great weight of the evidence, taking particular exception to the referee's conclusion that the parties were equally situated as to best-interest factor (c). We first recount the referee's and trial court's best-interest analyses as to the legal custody determination. Under factor (i), the referee explained that the child "ha[d] zero preference" and "enjoys spending time with both of his parents." The referee found the parties equally situated as to factors (a), (b), (c), and (h) and concluded that factors (j) and (*l*), which it "put the most weight of the analysis into," favored defendant.[4] Regarding factor (j), the referee characterized the parties' "lack of co-parenting" as "toxic[]" but explained that defendant was consistently compromising more than plaintiff, noting, for example, that the child continued to go to the orthodontist office plaintiff preferred, despite this requiring the child to miss school and this not being defendant's preference. The referee explained that "if the situation is not as [plaintiff] desires it, she files [c]ourt actions instead of trying to come up with a resolution," and this repeated litigation "has an effect on [the child] and is not in his best interest." The referee also noted that defendant "testified that if he were granted sole legal custody, he would continue to inform and consult [plaintiff] on decisions." And under factor (*l*), the referee expressed concern that plaintiff's "ability to separate her desires from [the child's] best interest has become increasingly more bordered." The referee pointed out that the child continued to go to plaintiff's preferred orthodontist office and that defendant switched pharmacies at plaintiff's request to make things more convenient for plaintiff rather than to serve the child's best interests. The referee also characterized plaintiff's request that the counselor "alter notes related to [the child's] psychological care" as "one of the more revolting things this [c]ourt has heard" and evidence that plaintiff "is far more concerned with how she is perceived than what is necessary for [the child] or in his best interest."

The trial court reiterated many of these same concerns, explaining that plaintiff's attempted interference with the child's counselor by asking her to change her notes was not in the child's best interests and how it was "disturbing" that plaintiff had sent a text calling the child "an attention-seeking wild card," among other evidence. The court further agreed with the referee that the constant court hearings are not beneficial for the child, that plaintiff showed an unwillingness to compromise, that the parties were failing to co-parent, and that the court had to choose a parent to act as sole legal custodian given the parties' inability to "get along on making a decision."

We detect no error in these findings and determinations. See *Bofysil*, 332 Mich App at 242, 245; *Kuebler*, 346 Mich App at 652-653. Although the parties were both invested in the child's wellbeing, "[i]f two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions

---

[4] The referee concluded that factors (d), (e), (f), (g), and (k) were inapplicable.

affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Plachta v Plachta*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 374260); slip op at 3, quoting *Fisher v Fisher*, 118 Mich App 227, 233; 324 NW2d 582 (1982). The trial court was justified in finding that the parties' constant disagreements over even seemingly minor issues concerning the child required awarding sole legal custody to one of the parties. See *Plachta*, ___ Mich App at ___; slip op at 3. And given evidence of plaintiff's unwillingness to compromise, plaintiff's placement of her desires above the child's best interests by interfering with the child's mental healthcare in asking the child's counselor to change her notes and by necessitating that the child miss school to go to an office that is more convenient for plaintiff, and defendant's assurance that he would continue to involve plaintiff in decision-making regarding the child, we find no error in the trial court's conclusion that it was defendant who should be awarded sole legal custody of the child.

We note finally that plaintiff's qualms with the referee's conclusion that the parties were equally situated as to factor (c) are also unavailing. Plaintiff points to evidence of the child's weight gain and other health issues in protesting that she is more seriously concerned about these issues than defendant. Plaintiff undoubtedly has shown significant concern regarding the child's weight and overall health by keeping the child on a healthy diet and providing the child a gym membership, among other measures. However, plaintiff's argument disregards evidence of defendant's similar investment in the child's health, including defendant's testimony that he cooks healthily, that the child exercises while in his care, and that he has the child involved in extracurricular activities. Further, plaintiff fails to address the child's pediatrician's testimony that it can be very difficult for a child of the child's age to reach an ideal weight and that a child would not cooperate with a strict diet. In light of the child's pediatrician's testimony and the trial court's finding that plaintiff "was more rigid," it is not clear that defendant taking stricter measures would be in the child's best interests, especially considering defendant's testimony that "when we were on such a strict thing to have him lose weight, [the child] was about as miserable as [he had] ever seen him." Plaintiff therefore has not shown that "the evidence clearly preponderates" against the referee's conclusion that the parties were equally situated as to factor (c). See *Bofysil*, 332 Mich App at 242.

Given these conclusions, we affirm the trial court's award of sole legal custody to defendant. See *Kuebler*, 346 Mich App at 652-653.

## C. RESTRICTION ON FILING FUTURE MOTIONS

Plaintiff lastly challenges the trial court's order that the parties "undergo psychological evaluations prior to the inception of future parenting time/custody motions" as an impermissible precondition that conflicts with MCL 722.27(1)(c). This argument presents an issue of first impression under the precedent that binds us. Persuaded by the sound statutory interpretation employed in our previous approach to a similar restriction, we agree with plaintiff and therefore reverse that portion of the trial court's order.

MCL 722.27(1)(c) anchors our analysis, providing in pertinent part:

(1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the

circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

* * *

(c) . . . modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to . . . MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

In interpreting MCL 722.27(1)(c), we remain cognizant that "[t]he primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Animal Partisan v Univ of Michigan Bd of Regents*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 374669); slip op at 3 (quotation marks and citation omitted). We must construe statutes "reasonably, keeping in mind the purpose of the act . . . ." *Bauer v Saginaw Co*, 332 Mich App 174, 193; 955 NW2d 553 (2020) (quotation marks and citation omitted). When statutory language is clear and unambiguous, we must enforce the statute as written and no further judicial construction is permitted. *Auto-Owners Ins Co v J & T Towing*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 369819); slip op at 3.

The portion of the trial court's order at issue states: "In the absence of emergency circumstances[,] [b]oth parties are to undergo psychological evaluations prior to the inception of parenting time/custody motions." We confronted a similar restriction in *Mildenberg v Mildenberg*, unpublished per curiam opinion of the Court of Appeals, issued September 29, 2022 (Docket Nos. 357175 and 358328), where the trial court had ordered:

[T]hat Defendant shall not file any petition to increase her parenting time until: (1) after the evaluation is completed and Defendant has undergone treatment for at least 12 months; and (2) then, Defendant shall be required to undergo another psychological evaluation to demonstrate progress after 12 months of treatment. [*Mildenberg*, unpub op at 7 (emphasis omitted).]

We concluded that the trial court's order preventing the "defendant from seeking a change in her parenting time no matter what changes take place in the children's lives or those of the parties before [the] defendant completes 12 months of counseling and demonstrates improvement on a mental-health assessment" impermissibly conflicted with MCL 722.27(1)(c) by imposing "inflexible barriers to modification of an existing order." *Id.* at 8. As we explained, MCL 722.27(1)(c) requires a trial court to "consider whether to change custody or parenting time *whenever* proper cause or change in circumstances" has been shown to exist. *Id.* Thus, proper cause or change in circumstances "are the only pre-conditions the legislature established for seeking a change in parenting time." *Id.* Because the trial court impermissibly preconditioned the defendant's ability to seek a modification in parenting time, we vacated that portion of the order. *Id.*

-11-

Although *Mildenberg* is unpublished and therefore not binding, MCR 7.215(C)(1), we find the reasoning employed persuasive and therefore adopt it. See *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020) ("Unpublished opinions are . . . not binding authority but may be persuasive or instructive."). MCL 722.27(1)(c) unambiguously conditions a trial court's consideration of a potential modification to custody or parenting time on the demonstration of proper cause or change in circumstances. "[W]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v Harris Co*, 529 US 576, 583; 120 S Ct 1655; 146 L Ed 2d 621 (2000) (quotation marks and citation omitted). By authorizing a trial court to modify a prior order in a child custody dispute whenever there is shown to be proper cause or a change of circumstances, the Legislature evinced its intent to place solely this condition on a trial court's consideration of a request for such a modification. Indeed, allowing trial courts to impose conditions additional to those stated in MCL 722.27(1)(c) would run contrary to the Legislature's purpose of attaining the best solution for children in child custody disputes when there is proper cause or a change in circumstances demonstrated. See *Bauer*, 332 Mich App at 193; *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001) ("Above all, custody disputes are to be resolved in the child's best interests.").

The additional condition imposed here therefore cannot withstand appellate review. By prohibiting the parties from filing future motions to modify custody or parenting time unless they first complete psychological evaluations or there is an emergency, the trial court improperly foisted an obstacle before its doors in contravention of MCL 722.27(1)(c). To be clear, once a motion is filed in any individual case, MCL 722.27(1)(c) does not necessarily prohibit a trial court from requiring a psychological evaluation if such evidence would have probative value on a relevant consideration before the court such as whether good cause or a change of circumstances exists, or what the best interests of the child are. It is only the requirement that a psychological evaluation be obtained in advance, as a precondition to even considering a motion, that runs afoul of MCL 722.27(1)(c). And, as we explained in *Mildenberg*, "[i]f a parent abuses th[e] process by repeatedly seeking unwarranted modification of prior orders, the court has available to it other permissible means to address overly-litigious parties, such as sanctions." *Mildenberg*, unpub op at 8. The trial court here may, of course, address any similar concerns by employing such means within its authority.

We therefore reverse this portion of the order.

IV. CONCLUSION

For the reasons stated, plaintiff has not identified error justifying relief with regard to the exclusion of evidence at the de novo hearing or the best-interest determinations as to the child's school or legal custody. But the trial court erred in prohibiting the parties from filing future motions to change custody or parenting time unless they first obtain a psychological evaluation, and that portion of its order must be reversed.

-12-

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani